**[J-93-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| PENNSYLVANIA STATE POLICE, | : | No. 25 MAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court dated July 7, |
| | : | 2015 at No. 1146 CD 2014 affirming in |
| v. | : | part, reversing in part and remanding in |
| | : | part the Final Determination of the |
| | : | Office of Open Records at No. AP 2014- |
| MICHELLE GROVE, | : | 0828 dated June 17, 2014. |
| | : | |
| Appellee | : | ARGUED:  September 14, 2016 |

**OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED:  June 20, 2017**

We granted discretionary review to consider whether video components of motor vehicle recordings (MVRs) created by appellant Pennsylvania State Police (PSP) are exempt from disclosure to the public as criminal investigative records under the Right-to-Know Law, 65 P.S. §67.101-67.3104 (RTKL) or the Criminal History Record Information Act, 18 Pa.C.S. §§9101-9183 (CHRIA).  We also consider whether these recordings implicate provisions of the Wiretapping and Electronic Surveillance Act, 18 Pa.C.S. §§5701-5782 (Wiretap Act).  The Commonwealth Court held MVRs generally are public records subject to disclosure, and affirmed in part the decision of the Office of Open Records (OOR) directing PSP to provide MVRs to appellee Michelle Grove (Grove).  The Commonwealth Court also reversed in part, remanding the matter to the OOR with instructions for redaction of the audio portions of the MVRs before disclosure. We now affirm in part and reverse in part.

## I. Background

Section 301 of the RTKL provides Commonwealth agencies like PSP must provide copies of all public records upon request. 65 P.S. §67.301. On March 24, 2014, Grove made a request to PSP pursuant to Section 301 for "a copy of the police report, and any video/audio recordings taken by the officers" at the scene of a two-vehicle accident in Potter Township, Centre County, Pennsylvania.[1] *Grove v. Pa. State Police*, 2014 WL 2801575, at *1 (Pa. Off. Open Rec., June 2014). The recordings at issue are two MVRs that were generated when two PSP troopers, Trooper Vanorden and Trooper Thomas, responded to the scene of the accident. Affidavit of William Rozier at ¶¶ 10-11.

On May 1, 2014, PSP, by its Deputy Open Records Officer, Lissa Ferguson, sent a letter response to Grove's request. The response provided Grove with a Public Information Release Report, which revealed one driver in the accident received a citation for failing to yield the right-of-way when entering or crossing a roadway (75 Pa.C.S. §3324), and the other driver received a citation for failure to use seatbelt (75 Pa.C.S. §4581). Public Information Release Report; and Rozier Affidavit at ¶ 20. PSP's letter response also informed Grove her request for the MVRs was denied on the

---

[1] The RTKL defines a "Requester" as "[a] person that is a legal resident of the United States and requests a record pursuant to this act. The term includes an agency." 65 P.S. §67.102. It is not clear from the record precisely why Grove sought the MVRs, but, as discussed *infra*, it appears she was on the scene and had some interest in the official description of the accident. Position Statement of Michelle Grove, dated May 30, 2014. In any event, the motivations of a Requester are immaterial under the RTKL. 65 P.S. § 67.301(b) ("A Commonwealth agency many not deny a requester access to a public record due to the intended use of the public record by the requester unless otherwise provided by law.").

basis the recordings were exempt from any public disclosure as: (1) "criminal investigative records" under Section 708(b)(16) of the RTKL,[2] and "investigative information" under Section 9106(c)(4) of CHRIA;[3] and (2) records "pertaining to audio recordings, telephone or radio transmissions received by dispatch personnel, including 911 recordings," under Section 708(b)(18)(i) of the RTKL.[4] PSP included a verification

---

[2] Section 708(b)(16) of the RTKL provides exceptions to Section 301's general mandate that Commonwealth agencies provide public records to Requesters, in pertinent part as follows:

> **(b) Exceptions.—**Except as provided in subsections (c) [pertaining to financial records] and (d) [pertaining to aggregated data], the following are exempt from access by a requester under this act:
>
> *           *           *
>
> (16) A record of an agency relating to or resulting in a criminal investigation, including:
>
> > (i) Complaints of potential criminal conduct other than a private criminal complaint.
> > (ii) Investigative materials, notes, correspondence, videos and reports.

65 P.S. §67.708(b)(16).

[3] Section 9106(c)(4) of CHRIA provides, in pertinent part:

> **(c) Dissemination of protected information**.--
>
> (4) Investigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic.

18 Pa.C.S. §9106(c)(4).

[4] Section 708(b)(18)(i) of the RTKL provides an exception to Section 301's mandate that an agency provide public records where the Requester seeks "Records or parts of (continued…)

with its letter response, also executed by Lissa Ferguson (the Ferguson Verification). The Ferguson Verification did not include a description of the MVRs or the nature or purpose of the recordings. In addressing the request for release of the MVRs, the Ferguson Verification concluded the MVRs fell under the exemption for "audio recordings, telephone or radio transmissions received by emergency dispatch personnel, including 911 recordings" in Section 708(b)(18)(i) of the RTKL. Ferguson Verification at ¶ 6. The Ferguson Verification did not reference any other section of the RTKL or CHRIA with respect to the MVRs.[5]

On May 24, 2014, Grove filed an appeal to the OOR from PSP's letter response denying the release of the MVRs. The OOR invited the parties to supplement the record. On May 30, 2014, PSP provided an unsworn position statement from PSP's counsel, Jordan G. Spahr, Esquire, which incorporated the Ferguson Verification by reference. The PSP alleged in its position statement the MVRs are criminal investigative records, and thus exempt from disclosure under Section 708(b)(16) of the RTKL. *Grove*, 2014 WL 2801575 at *1; *see also* PSP Position Statement at 1-2.[6]

_____

(…continued)
records, except time response logs, pertaining to audio recordings, telephone or radio transmissions received by emergency dispatch personnel, including 911 recordings." 65 P.S. §67.708(b)(18)(i).

[5] The Ferguson Verification stated the Crash Report — which is not at issue in this matter — was exempt from disclosure under Section 708(b)(16) of the RTKL and CHRIA, 18 Pa.C.S. §§9101-9183. Ferguson Verification at ¶ 4. However, the Ferguson Verification did not reference these provisions with respect to disclosure of the MVRs. *Id.* at ¶¶ 4-6.

[6] Although the May 1, 2014 letter response to Grove's records request relied upon CHRIA as a basis to deny access to the MVRs, neither PSP's position statement nor (continued…)

Accordingly, PSP's position statement and incorporated Ferguson Verification collectively provided two bases for refusal to release the MVRs to Grove: (1) Section 708(b)(16) of the RTKL as criminal investigative records; and (2) Section 708 (b)(18)(i) of the RTKL as a record received by emergency dispatch.

Grove also submitted additional materials in support of her request, including her own position statement and two photographs of the accident scene, depicting the site plus skid marks from the collision and the damage to one of the vehicles. *Grove*, 2014 WL 2801575 at *1. In her position statement, Grove noted she arrived at the scene of the accident before the troopers and remained there until after the officers left. She recounts her observations at the scene of the accident, including her own description of the conversations that occurred between the officers and the drivers and bystanders. Position Statement of Michelle Grove, dated May 30, 2014. Grove's photographs show the accident scene as a public street in front of residential homes. *Id.*

On June 17, 2014, the OOR issued its Final Determination, directing PSP to provide complete copies of the MVRs to Grove. *Grove*, 2014 WL 2801575 at *3. The OOR determined the Ferguson Verification contained conclusory statements denying disclosure and was thus insufficient to show the recordings included transmissions received by emergency dispatch personnel as required for exemption under Section 708(b)(18)(i) of the RTKL. *Id.*, *citing Office of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth 2013) ("[A] generic determination or conclusory statements are not sufficient to justify the exemption of public records."). The OOR further noted, to the

(…continued)
the Ferguson Verification submitted to the OOR referenced or relied upon CHRIA as a basis for denial. PSP Position Statement & Ferguson Verification.

extent PSP argued in its unsworn position statement submitted by PSP's counsel that the MVRs are exempt as criminal investigative records under Section 708(b)(16) of the RTKL, the unsworn statement was not a competent basis for exemption. *Id.*, *citing Housing Authority of the City of Pittsburgh v. Van Osdol*, 40 A.3d 209 (Pa. Cmwlth. 2012) (holding statements of counsel not competent evidence). The OOR concluded PSP failed to submit any evidence the MVRs were investigative records and thus failed to meet its burden they were exempt from disclosure under either Section 708(b)(16) or Section 708(b)(18)(i) of the RTKL.

PSP appealed to the Commonwealth Court, arguing the MVRs qualify as "criminal investigative records" and are therefore exempt from disclosure under Section 708(b)(16) of the RTKL, and also renewing its argument from the May 1, 2014 letter response that the records are exempt as "investigative records" under Section 9106(c)(4) of CHRIA.[7] PSP further argued, for the first time, disclosure of the MVRs under the RTKL would violate the Wiretap Act. Additionally, in light of the OOR's final determination that PSP failed to meet its burden to prove the MVRs were exempt as criminal investigative records under Section 708(b)(16) of the RTKL, PSP sought leave to supplement the record with a sworn affidavit of its Open Records Officer, William Rozier (the Rozier Affidavit), in further support of that argument.

The Commonwealth Court first considered PSP's request to supplement the record with the Rozier Affidavit. The court recognized it exercises plenary, *de novo*

---

[7] In the Commonwealth Court appeal, PSP abandoned its argument the MVRs are exempt as transmissions or recordings received by emergency personnel under Section 708(b)(18)(i) of the RTKL. *Pennsylvania State Police v. Grove*, 119 A.3d 1102, 1105 (Pa. Cmwlth. 2015).

review of OOR decisions involving Commonwealth agencies, such as PSP. *Pennsylvania State Police v. Grove*, 119 A.3d, 1102, 1105 (Pa. Cmwlth. 2015), *citing Bowling v. Office of Open Records,* 75 A.3d 453, 477 (Pa. 2013) (standard of review of appeals from determinations made by appeals officers under the RTKL is *de novo* and the scope of review is broad or plenary) (additional citations omitted). Considering its *de novo* standard of review, the court noted "[w]here the record before OOR is inadequate to determine whether requested material is exempt from disclosure, this Court has discretion to permit a party to enlarge the record on appeal and to consider additional evidence." *Id.*, *citing Bowling*, 75 A.3d at 476; *Carey v. Pa. Dep't of Corrs*, 61 A.3d 367, 371 n.3, 377 (Pa. Cmwlth. 2013) (additional evidence may be taken to ensure sufficient record for adequate appellate review). The court noted the record as presented before the OOR did not contain any information regarding the MVRs, including their content or the circumstances under which they are created, and the PSP's supplemental Rozier Affidavit did contain such details.

Considering whether supplementing the record was proper, the court first acknowledged PSP was not permitted to ignore its burden before the OOR to present evidence to support its position. *Id.* at 1106, *citing Pennsylvania Tpk. Comm'n v. Murphy*, 25 A.3d 1294, 1297-98 (Pa. Cmwlth. 2011) (denying supplementation of record on an appeal as an attempt to obtain "a proverbial second bite of the apple" where there was no apparent reason for the failure to submit the additional affidavits to OOR). However, the court acknowledged PSP had relied on prior decisions of the OOR in responding to Grove's records request, and those prior decisions held MVRs were exempt from disclosure under Section 708(b)(16) of the RTKL as criminal investigative

records.[8]  *Id.*  The court noted PSP's reliance on these prior decisions was not misplaced, as those cases had not been overruled at the time of PSP's response.  *Id.* at 1106.  The court thus permitted PSP to supplement the record with the Rozier Affidavit *Id.*

The Rozier Affidavit describes the specific content and information surrounding the MVRs at issue as well as the policies and procedures surrounding MVRs generally. With respect to the specific MVRs at issue in this matter, the Rozier Affidavit provided the MVRs were created when Trooper Vanorden and Trooper Thomas arrived on the scene of an accident that occurred on March 22, 2014, at 1:42 p.m., or "1342 hours." Rozier Affidavit at ¶¶ 9-11.  The MVRs do not depict the accident itself.  *Id.* at ¶ 19. Trooper Vanorden's MVR was recorded from his unmarked vehicle and contains video only.  *Id.* at ¶ 10.  The MVR shows Trooper Vanorden speaking to the individuals involved in the accident, examining the vehicle damage, directing one of the drivers to move his vehicle to a safer area, and relaying information to Trooper Thomas upon his arrival.  *Id.*  Trooper Thomas's MVR was recorded from his marked vehicle, and contains both video and audio recordings of his interviews with the two drivers, as well as bystanders at the scene.  *Id.* at ¶ 11.  The Rozier Affidavit notes the investigation into the accident was conducted by Trooper Thomas, and states the "investigative information" on the MVR specifically includes Trooper Thomas's conversations with the

---

[8]  *See, e.g.*, *Otto v. Pa. State Police*, 2014 WL 97152 (Pa. Office of Open Rec., Jan. 3, 2014) (MVRs relate to criminal investigations and are exempt from disclosure under Section 708(b)(16) of RTKL); *Keller v. Pa. State Police*, 2014 WL 1284524 (Pa. Office of Open Rec, Mar. 13, 2014) (relying on *Otto* to hold MVRs are criminal investigative records not subject to public disclosure).

operators involved and the bystanders, as he obtained their statements about how the accident occurred. *Id.* at ¶¶ 9, 19.

The Rozier Affidavit also sets forth information about the use and procedures surrounding MVRs generally. It provides MVRs are "typically activated when a trooper activates his or her emergency lights or siren." Rozier Affidavit at ¶ 14. The affidavit also references a PSP internal regulation, known as Field Regulation 6-12 (FR 6-12), which sets forth enumerated situations in which MVRs are to be used as follows:

> Utilization: Members operating MVR-equipped vehicles shall endeavor to record the following types of incidents:
>
> (1) Traffic and criminal enforcement stops.
>
> (2) In-progress Vehicle and Crime Code violations.
>
> (3) Police pursuits.
>
> (4) Field interviews, interrogations, and intoxication testing.
>
> (5) Patrol vehicle travel and movements when emergency lights and/or siren are activated.
>
> (6) Fatal crash or major crime scenes, as necessary, to document the scene.
>
> (7) Traffic safety and sobriety checkpoints, at the discretion of the checkpoint supervisor.
>
> (8) Prisoner transports
>
> (9) Searches of vehicles or persons.
>
> (10) Any other incident the member deems appropriate while acting in the performance of their official duties.

*Id.* at ¶¶ 15-16. The Rozier Affidavit further provides MVRs are retained and destroyed by PSP on a normal schedule, but will not be destroyed when there is an anticipation the records are going to used "in civil, criminal, quasi-criminal, forfeiture, administrative enforcement or disciplinary proceedings." *Id.* at ¶ 17.

The Commonwealth Court first addressed PSP's argument the MVRs are criminal investigative records exempt from disclosure under Section 708(b)(16) of the RTKL and investigative records exempt under Section 9106(c)(4) of CHRIA because they contain information about an accident which resulted in "summary criminal offenses," *i.e.*, 75 Pa.C.S. §3324 (failure to yield the right-of-way when entering or crossing roadway) and 75 Pa.C.S. §4581 (failure to use seatbelt). 119 A.3d at 1108. The court noted information documenting the actions of Commonwealth agencies, including PSP, is presumed to be publicly accessible under the RTKL, unless an exemption applies. *Grove*, 119 A.3d at 1107, *citing* 65 P.S. §§67.102, 67.305; *Pennsylvania State Police v. McGill*, 83 A.3d 476, 479 (Pa. Cmwlth. 2014) (*en banc*); *Carey,* 61 A.3d at 371-72. The court acknowledged PSP relied on Section 708 of the RTKL, which exempts public records from disclosure if they relate to or result in a "criminal investigation, including . . . (ii) Investigative materials, notes, correspondence, videos and reports." 65 P.S. §67.708(b)(16). The court recognized the RTKL does not define what constitutes "investigative" materials. *Grove*, 119 A.3d at 1108. The court further acknowledged PSP relied on Section 9106(c)(4) of CHRIA for exemption of the records, which provides generally that "[i]nvestigative and treatment information shall not be disseminated" to any individual. *Id., quoting* 18 Pa.C.S. §9106(c)(4). The court noted CHRIA defines "investigative information" as "information assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information." *Id. quoting* 18 Pa.C.S. §9102.

The court recognized PSP had the burden to demonstrate by a preponderance of evidence which of its records is exempt from disclosure, noting exemptions from disclosure are to be narrowly construed. *Id., citing McGill*, 83 A.3d at 479, *Carey*, 61 A.3d at 373. The court further held "the mere fact that a record has some connection to a criminal proceeding, does not automatically exempt it under Section 708(b)(16) of the RTKL or CHRIA." *Id.* at 1108, *citing Coley v. Phila. Dist. Attorney's Office*, 77 A.3d 694, 697-98 (Pa. Cmwlth. 2013) (although witness statements were exempt as investigative under RTKL and CHRIA, immunity agreement with witness was not exempt unless shown to be investigative information). The court concluded that, to be exempt, records must be created to report a criminal investigation, document evidence in a criminal investigation, or set forth steps carried out in a criminal investigation. *See id.* at 1108 (collecting cases).

In considering the only evidence regarding the content of the MVRs — the Rozier Affidavit — the Commonwealth Court determined "MVRs are created to document troopers' performance of their duties in responding to emergencies and in their interactions with members of the public, not merely or primarily to document, assemble or report on evidence of a crime or possible crime." *Id.* Moreover, citing PSP's FR 6-12, the court noted instances in which MVRs **do not** contain investigative content include: "directions to motorists in a traffic stop or at an accident scene, police pursuits, and prisoner transports." *Id.*, *citing* Rozier Affidavit at ¶¶ 10, 16. The court thus concluded "MVRs themselves are therefore not investigative material . . . exempt from disclosure under Section 708(b)(16) of the RTKL or CHRIA." *Grove*, 119 A.3d at 1108.

The court then closely examined the MVRs at issue in this case, commencing with Trooper Vanorden's MVR — which contains video-only. Trooper Vanorden's MVR depicts the trooper observing the scene, speaking to individuals, and directing the vehicles. The court found this video depiction did not consist of investigative material, and thus Trooper Vanorden's MVR was not exempt from disclosure under the RTKL or CHRIA. *Id.* at 1109. The court next examined Trooper Thomas's MVR. The court held MVRs can be considered to contain "investigative information" exempt from disclosure if they contain "witness interviews, interrogations, intoxication testing and other investigative work." *Id.* at 1109. The court further found the audio portion of Trooper Thomas's MVR included witness interviews, and determined this audio aspect contained investigative information exempt from disclosure under the RTKL and CHRIA. *Id.* at 1109-1110, *citing* Rozier Affidavit at ¶¶ 11, 16. The court then acknowledged Section 706 of the RTKL specifically provides a mechanism to redact exempt information from an otherwise non-exempt record as follows:

> If an agency determines that a public record . . . contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. If the information which is not subject to access is an integral part of the public record . . . and cannot be separated, the agency shall redact from the record the information which is not subject to access and the response shall grant access to the information which is subject to access. The agency many not deny access to the record if the information which is not subject to access is able to be redacted.

*Id.* at 1109, *quoting* 65 P.S. §67.706. Accordingly, the court held PSP was entitled to redact the audio portion of Trooper Thomas's MVR containing investigative material, but was not permitted to withhold the entire MVR. *Id.*

The Commonwealth Court also considered PSP's argument any disclosure of MVRs — redacted or unredacted —would violate the Wiretap Act.[9] The court noted the Wiretap Act does not apply to oral communications where the speaker has notice of the recording. *Grove,* 119 A.3d 1110, *citing* 18 Pa.C.S §5702 (defining "[o]ral communication" as "[A]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation"); *Commonwealth v. Henlen* 564 A.2d 905, 906-07 (Pa. 1989); *Gunderman v. UCBR*, 505 A.2d 1112, 1115 (Pa. Cmwlth. 1986). The court further noted the troopers knew they were being recorded by their own MVR equipment, and accordingly, the Wiretap Act does not prevent release of that portion of the audio recording that captured the troopers' communications with each other. *Id.* at 1110-11. The court noted, however, there was no evidence to show whether the citizens to whom Trooper Thomas spoke in that audio portion had notice they were being recorded, or whether they had reasonable expectation of privacy in those conversations. The court therefore remanded to the OOR to determine if the witnesses and drivers knew they were being recorded, and further directed that PSP may redact from the MVR any audio

---

[9] The court recognized the Wiretap Act issue was "belatedly raised" by PSP, as the agency had never before relied on this basis to deny disclosure of the MVRs. 119 A.3d at 1110. The court nevertheless decided the issue because, in its view, an agency "cannot waive third parties' privacy rights." *Id.*, *citing Commonwealth, Dep't of Envtl. Prot. v. Cole*, 52 A.3d 541, 551 (Pa. Cmwlth. 2012) ("an agency does not have the right or authority to waive an individual's interest in keeping his information confidential.").

portions that included statements of private citizens who had no notice of the recording.

*Id.* at 1111.[10]

PSP filed a petition for allowance of appeal, and this Court granted review of the following questions:[11]

(1) Is a video, created as a result of a Pennsylvania State Trooper initiating a criminal investigation, exempt from disclosure under Section 708(b)(16) of the [RTKL]?

(2) Is a video, created as a result of a Pennsylvania State Trooper initiating a criminal investigation, exempt from disclosure under the [CHRIA]?

(3) Is a video depicting troopers at a crash scene in which citations were issued "speaking with the operators of the vehicles," "observing the crash scene and the damage to the vehicles," and "directing the operator of the truck involved in the accident to move his vehicle to a safer area," considered investigative materials pursuant to Section 708(b)(16) of the [RTKL]?

(4) Is a video depicting troopers at a crash scene in which citations were issued "speaking with the operators of the vehicles," "observing the crash scene and the damage to the vehicles," and "directing the operator of the truck involved in the accident to move his vehicle to a safer area," considered investigative information pursuant to the [CHRIA]?

(5) Do provisions of the [Wiretap] Act apply to the audio component of [MVRs]?

---

[10] We recognize this portion of the Commonwealth Court's order appears to be redundant, as it had already concluded the audio portion of the conversations with the drivers and witnesses on the scene must be redacted. The court nevertheless proceeded to hold that redactions of communications by individuals who had no notice of the recording would result in compliance with the Wiretap Act, and accordingly, the redacted MVRs would not be exempt from disclosure. 119 A.3d at 1111.

[11] Grove did not seek review of the Commonwealth Court's ruling that PSP could redact certain audio aspects of Trooper Thomas's MVR. As a result, our discussion and holding with respect to issues 1-4 regarding exemption under the RTKL and CHRIA concerns only the video aspects of the MVRs.

(6) Should this case be remanded for further factual findings to determine whether modifying [an MVR], as required by the Commonwealth Court, essentially creates a record in violation of Section 705 of the [RTKL]?

*Pennsylvania State Police v. Grove,* 133 A.3d 292, 293 (Pa. 2016).[12]   All of the questions presented are questions of law.  As such our applicable standard of review is *de novo*, and the scope of our review is plenary.  *See Bowling,* 75 A.3d at 477 (standard of review of OOR's decision is *de novo* and scope of review plenary); *see also Levy v. Senate of Pa.,* 65 A.3d 361 (Pa. 2013) (applying *de novo* standard of review and plenary scope of review in appeal from Senate Appeals Officer's decision regarding RTKL request).

## II.     Disclosure of MVRs under RTKL and CHRIA

### *A. Arguments*

The first four issues presented by appellant PSP are intertwined and involve whether MVRs generally, and the specific MVRs in this matter, are exempt from disclosure under Section 708(b)(16) of the RTKL (agency records "relating to or resulting in a criminal investigation, including complaints of potential criminal conduct other than a private criminal complaint" and "investigative materials, notes, correspondence, videos and reports" exempt) or Section 9106(c)(4) of CHRIA ("investigative and treatment information" protected).  PSP argues the Commonwealth Court erroneously created a blanket rule that MVRs are public records, subject to

---

[12] For ease of discussion, we consider the first four issues together, then proceed to the sixth issue involving the RTKL, and finally decide the fifth question regarding the Wiretap Act.

redaction, in violation of the plain language of both RTKL and CHRIA. PSP seeks a contrary ruling that MVRs are exempt from disclosure pursuant to Section 708(b)(16) of the RTKL. In support of this argument, PSP submits in order for the exemption to apply, two elements must be met: (1) there must be a criminal investigation, and (2) the requested record must be related to that criminal investigation. PSP claims both elements were met with respect to the MVRs in this matter and the Commonwealth Court improperly allowed disclosure of the video portions.

PSP first argues the troopers conducted an investigation at the scene to determine if any violations of the Vehicle Code occurred. PSP notes Section 708 (b)(16) of the RTKL does not require the investigation actually result in the issuance of citations or arrests in order to preclude disclosure, but rather, a record must be created, *i.e.* an MVR, that is related to or results in a criminal investigation. Brief of Appellant at 16, *citing* 65 P.S. §67.708(b)(16). PSP notes the RTKL does not provide definitions for the phrase "criminal investigation," or what information "relates" to a criminal investigation, and therefore cites the Commonwealth Court's analysis in *Department of Health v. Office of Open Records*, 4 A.3d 803 (Pa. Cmwlth. 2010), which involved the disclosure of "noncriminal investigative materials," pursuant to Section 708(b)(17) of the RTKL.[13] In defining what constitutes a "noncriminal investigation" as used in subsection (b)(17) the *Dep't of Health* court considered definitions of "investigation" in Blacks' Law Dictionary and Webster's Third New International Dictionary. Relying on those

---

[13] Section 708(b)(17) of the RTKL provides exceptions to Section 301's mandate that an agency provide public records where the "record of an agency relate[s] to a noncriminal investigation, including: . . . (ii) investigative materials, notes, correspondence and reports." 65 P.S. §67.708(b)(17)(ii).

definitions, PSP submits "the term 'investigation' means a systematic or searching inquiry, a detailed examination, or an official probe." Brief of Appellant at 17, *quoting Dep't of Health*, 4 A.3d at 810-11. PSP argues that, because the statutory structure of Section 708(b)(16), relating to criminal investigations, is similar to the structure of Section 708(b)(17) relating to noncriminal investigations, the definition of "investigation" articulated by the court in *Dep't of Health* applies equally to Section 708(b)(16). PSP further notes because Section 708(b)(16) expressly includes "videos" as documents under the criminal investigation exemption, the General Assembly specifically intended to protect MVRs. PSP concludes a "criminal" investigation occurred in this matter because the troopers issued citations under Sections 3324 and 4581 of the Vehicle Code based on the statements and accounts of the individuals at the accident scene. Brief of Appellant at 18.

PSP next turns to the second element it claims must be met for an MVR to be exempt from disclosure, *i.e.* whether the record is "relat[ed]" to the criminal investigation." *Id.* at 19, *citing* 65 P.S. §67.708(b)(16). PSP again notes the RTKL does not define the term "relating" or "related" and relies on dictionary definitions of the term "relate" as "to stand in some relation; to pertain; refer; to bring into association with or connection with . . ." and the term "related" as "[s]tanding in relation; connected; allied; akin." *Id., quoting Black's Law Dictionary* 1288 (6th ed. 1990). PSP thus concludes both Trooper Vanorden's and Trooper Thomas's MVRs are related to a criminal investigation because they were created to document the troopers' investigation of the accident. *Id.* PSP asserts it is tasked with "enforce[ing] the laws regulating the use of the highways of this Commonwealth." *Id.* at 18, *quoting* 71 P.S. §250(g). PSP thus

claims an investigation into whether a violation of the Vehicle Code occurred is an official "criminal investigation," and Trooper Thomas determined citations were warranted based upon the statements obtained during that criminal investigation. Accordingly, PSP argues the Commonwealth Court erred in its finding that "[t]he mere fact that a record has some connection to a *criminal proceeding* does not automatically exempt it under Section 708(b)(16) of the RTKL or CHRIA." *Id.* at 20, *quoting Grove*, 119 A.3d at 1108 (emphasis supplied by PSP). PSP asserts the Commonwealth Court's conclusion the MVRs are not exempt from disclosure was erroneous because there is no indication in the statute the exemption applies only when depicting an actual "criminal proceeding."[14] *Id.* PSP argues the only analysis necessary under the statute is whether the record is "related" to a criminal investigation. PSP concludes all that is required for exemption under Section 708(b)(16) of the RTKL is a "connection" between the video and the criminal investigation. *Id.* at 22-23.

PSP further argues MVRs are exempt from disclosure under the plain language of Sections 9106(c)(4) and 9102 of CHRIA, which provide generally, that "[i]nvestigative

---

[14] PSP strongly asserts the Commonwealth Court erred in changing the standard for exemption set forth in the RTKL from relating to or resulting in a criminal **investigation** to relating to a criminal **proceeding**. While the Commonwealth Court does at one point state "[t]he mere fact that a record has some connection to a criminal **proceeding** does not automatically exempt it under Section 708(b)(16) of the RTKL or CHRIA," the entirety of the court's analysis beyond this cherry-picked quote clearly involves its interpretation of a criminal **investigation**. *Grove*, 119 A.3d at 1108 (emphases added). More specifically, the court examined other records held to be protected from the RTKL and CHRIA as documents "created to report on a criminal **investigation** or set forth to document evidence in a criminal **investigation**." *Id.* (emphasis added). The court also noted, "The MVR equipment is activated when an officer's siren or emergency lights are turned on, a non-**investigative** event." *Id.* (emphasis added). We therefore reject PSP's argument the court altered or changed the standard for exemption under the RTKL.

and treatment information shall not be disseminated," and define "investigative information" as information "assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include *modus operandi* information."[15] PSP further claims the analysis of whether material is protected under CHRIA requires only an examination of whether the "information was assembled as the result of any inquiry . . . into a criminal incident or an allegation of wrongdoing" and thus asserts MVRs are exempt from disclosure regardless of whether they include any "investigative content." PSP asserts the MVRs at issue were directly connected to the initiation of a specific criminal investigation because the responding troopers ultimately issued citations for traffic violations. *Id.* at 26.

Finally, PSP argues the Commonwealth Court created a *per se* rule that MVRs are public records always subject to disclosure. *Id.* at 27, *citing Grove*, 119 A.3d at 1108. PSP acknowledges the court stated FR-6-12 "demonstrates that the MVRs are created to document troopers' performance of their duties in responding to emergencies and in their interactions with members of the public, not merely or primarily to document, assemble or report on evidence of a crime or possible crime." Id. at 28-29, *quoting Grove*, 119 A.3d at 1108. However, PSP argues the Commonwealth Court failed to consider that, when a trooper is "responding to an emergenc[y]" or "interact[ing] with members of the public," an MVR is created "because the trooper is responding to the scene of a potential criminal incident to investigate it or that [a] member of the

---

[15] We note that in quoting the definition of "investigative information" under CHRIA throughout its brief, PSP omits the second appearance of the word "criminal" modifying the word "wrongdoing."

public, with whom the trooper is interacting, is suspected of committing a criminal violation." *Id.* at 29, *citing* Rozier Affidavit. According to PSP, MVRs are thus always "related" to a criminal investigation and exempt from disclosure under Section 708 (b)(16) of the RTKL and include exempt "investigative information" under Sections 9102 and 9106(a)(4) of CHRIA. PSP asserts we should therefore reverse the Commonwealth Court's decision allowing disclosure of the MVRs.[16]

Appellee Grove argues the Commonwealth Court correctly analyzed the nature and purpose of MVRs when it stated they "are created to document troopers' performance of their duties in responding to emergencies and in their interactions with members of the public, not merely or primarily to document, assemble or report on evidence of a crime or possible crime." Brief of Appellee at 7, *quoting Grove*, 119 A.3d at 1108. Addressing the content of the MVRs in this case, Grove submits a routine response to a traffic accident does not rise to the level of a criminal investigation such

---

[16] The Pennsylvania State Association of Township Supervisors (PSATS) and County Commissioners Association of Pennsylvania (CCAP) filed an *amicus curiae* brief in support of PSP. Like PSP, PSATS and CCAP argue the Commonwealth Court applied an improper standard to Grove's records request, which conflicts with the plain language of the RTKL, and thus erroneously determined MVRs are public records available for dissemination. PSATS and CCAP submit Section 708(b)(16) exempts records from disclosure if they facially relate to a criminal investigation. *Amici* argue the court incorrectly altered the "criminal investigation" exemption by holding the "mere fact that a record has some connection to a criminal proceeding does not automatically exempt it under" the RTKL or CHRIA. *Amicus* Brief of PSATS and CCAP at 7-8. *Amici* claim the Commonwealth Court erred in holding MVRs must contain "investigative material" in order to be exempt from disclosure because the plain language of the RTKL exempts records from disclosure if they simply "relate to" a criminal investigation. PSATS and CCAP also argue the disclosure of MVRs is prohibited under CHRIA because the recordings were made in connection with PSP's inquiry into a criminal incident, *i.e.*, a traffic accident involving motor vehicle code violations. Accordingly, PSATS and CCAP assert because PSP troopers responded to an automobile accident and issued citations, the event was a "criminal incident" and the MVRs contain "investigative information" as defined in CHRIA. *Id.* at 11, *citing* 18 Pa.C.S. §9102.

that the resulting recordings are always exempted from disclosure under the RTKL. Grove first notes Trooper Vanorden's MVR contains video only of the trooper interacting with the drivers and directing them where to park — the same scene any passerby would observe — and thus does not contain protected investigative information. With respect to Trooper Thomas's MVR, Grove notes that while the MVR may contain some information that could potentially be useful in a summary traffic prosecution; such potential use does not alone raise the MVR to a protected record containing information "related to a criminal investigation." Grove asserts the MVRs operate automatically to record what happens to be in view of the camera, without a specific purpose. Grove submits the MVRs are thus distinguishable from other recordings such as an accident reconstruction or witness interview, which are specifically made for purposes of a criminal investigation and subsequent prosecution.

Grove further warns adoption of PSP's position would exempt any and all MVRs automatically created when a state trooper pulls over a motorist for a traffic violation and such broad application would diminish the public's ability to scrutinize its public officials in their interactions with citizens. Grove notes the routine duties of state troopers are not *per se* protected as investigative, and thus the Commonwealth Court correctly determined the video portion of these MVRs must be released upon request. Brief of Appellee at 10, *citing McGill*, 83 A.3d at 479 (exemptions from disclosure must be narrowly construed under RTKL, which is meant to promote public access to government information).

With respect to the application of CHRIA, Grove argues in order for a record to be exempt from disclosure under CHRIA, it must be "assembled" as a result of an

investigation into criminal wrongdoing. *Id.* at 11, *citing* 18 Pa.C.S. §9102 (defining "investigative information"). Grove submits MVRs document police activity whenever the lights and sirens are activated, and PSP does not "assemble" investigative information when creating them.

The OOR filed an *amicus* brief in support of appellee Grove, in which it argues the RTKL and CHRIA do not provide a general prohibition on the release of MVRs, and such records ordinarily should be publicly accessible. The OOR acknowledges that while there may be instances in which a MVR will contain a record of a criminal investigation — for example, when the MVR apparatus records the actual sale of illegal drugs — the video portion of the MVRs in this case of a routine traffic accident did not document a criminal investigation, and thus does not qualify as an investigative record exempt from disclosure under either the RTKL or CHRIA. The OOR argues the MVRs were created to document police officers' dealings with the public, and the tangential connection to an infraction or crime does not raise the recordings to the level of protected investigative content.[17]

---

[17] The Pennsylvania Newsmedia Association (PNA) and Reporters Committee for Freedom of the Press (RCFP) also filed *amicus* briefs in support of Grove. PNA and RCFP assert MVRs by their nature and intent are documentary, non-investigatory recordings because the dashboard camera video apparatus is activated any time an officer activates the police vehicle's lights and sirens and the resulting video illustrates police performing public duties and interactions with citizens. *Amici* reiterate the information captured on MVRs is the same information a bystander would observe. *Amici* further argue Section 708(b)(16) of the RTKL does not, and was not intended to, shield such factual police records from disclosure. The common meaning of the term "investigative" as used in Section 708(b)(16) of the RTKL is "to observe or study by close examination and systematic inquiry; to make a systematic examination; to conduct an official inquiry." PNA and RCFP *Amicus* Brief at 8-9, *citing* Merriam-Webster's Collegiate Dictionary 659 (11th ed. 2004). Amici argue MVRs do not contain such a high level of involvement or activity and are therefore not investigatory in nature. *Amici* (continued…)

*B. Discussion*

Whether the RTKL or CHRIA preclude disclosure of MVRs recorded in response to an accident presents a question of statutory construction, which is a pure question of law over which our standard of review is *de novo* and our scope of review is plenary. *Lynnebrook & Woodbrook Assocs.*, *L.P. v. Borough of Millersville*, 963 A.2d 1261, 1262 n.2 (Pa. 2008). Under the Statutory Construction Act, our objective "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. §1921(a).

*i. The RTKL*

The RTKL requires Commonwealth agencies to provide access to public records upon request. 65 P.S. §67.301 ("A Commonwealth agency shall provide public records

---

(…continued)
assert MVRs contain purely factual information, and thus are non-exempt public records under the RTKL.

Amici further argue CHRIA does not apply to protect MVRs from disclosure because they are not "investigative information." *Amici* argue Section 9106(c)(4) of CHRIA does not cover every electronic record created by PSP. *Id.* at 18. *Amici* note Section 9106(b)(3) of CHRIA limits access to investigative information "contained in files of any criminal justice agency" and affirmatively requires PSP to collect investigative information, separate from law enforcement files, and place them within the electronic system of CHRIA. *Id.* at 19, *citing* 18 Pa.C.S. §9106(b)(3). *Amici* claim MVRs are not subject to Section 9106(b)(3) of CHRIA, and do not *per se* meet the definition of "investigative information" in Section 9102 of CHRIA. Thus, in order to give CHRIA its full meaning, *Amici* note Section 9106(c)(4), which prohibits disclosure of "investigative information," must be read together with Section 9106(b)(3), which provides restrictions for dissemination of investigative information contained in the files of a criminal justice agency. *Amici* assert the protections of Section 9106(b)(3) are limited to "investigative information" gathered from law enforcement and placed by PSP into an "automated or electronic criminal justice information system." PNA and RCFP *Amicus* Brief at 21. *Amici* argue MVRs do not fall into this category because they are purely factual, documentary records, unrelated to CHRIA information gathered and stored by PSP. *Id.* at 22.

in accordance with this act."). Section 102 of the RTKL defines a "public record" as: "A record, including a financial record, of a Commonwealth or local agency that: (1) is not exempt under section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." 65 P.S. §67.102. A "record" is further defined under the RTKL as:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

*Id.* There is no dispute that MVRs are public records of an agency as defined in the RTKL and thus subject to public disclosure unless some exemption applies. We consider whether MVRs generally, and the video portions of Trooper Vanorden and Trooper Thomas's MVRs in this matter specifically, qualify under an enumerated exemption to disclosure described in Section 708(b)(16) of the RTKL regarding "criminal investigative records."

The RTKL provides, "[t]he burden of proving that a record of a Commonwealth agency . . . is exempt from public access shall be on the Commonwealth Agency . . . receiving a request by the preponderance of the evidence." 65 P.S. §67.708(a)(1). The RTKL specifically exempts from disclosure to a requester such as Grove any agency record "relating to or resulting in a criminal investigation," including "[i]nvestigative materials, notes, correspondence, videos and reports." 65 P.S. §67.708(b)(16)(ii). We interpret these exemptions in a manner that comports with the statute's objective, "which is to empower citizens by affording them access to

information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012).

Moreover, when the General Assembly replaced the Right to Know Act in 2009 with the current RTKL, it "significantly expanded public access to governmental records . . . with the goal of promoting government transparency." *Levy* 65 A.3d at 368 "Consistent with the RTKL's goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly construed." *Office of Governor v. Davis*, 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015)*, citing McGill*, 83 A.3d at 479.

Under the Statutory Construction Act, where the words or phrases at issue are undefined by the statute itself, we must construe the words and phrases according to their plain meaning and common usage. 1 Pa.C.S. §1903(a). The RTKL does not define the central phrase "criminal investigation" as used in Section 708(16)(b)(ii). The plain meaning of a "criminal investigation" clearly and obviously refers to an official inquiry into a possible crime. *See, e.g.*, https://www.merriam-webster.com/dictionary/criminal (last visited Jan. 17, 2017) ("relating to crime or to the prosecution of suspects in a crime"); https://www.merriam-webster.com/dictionary/investigation (last visited Jan. 17, 2017) ("to investigate" is "to observe or study by close examination and systematic inquiry," "to make a systematic examination;" or "to conduct an official inquiry").

The Commonwealth Court has previously opined that material exempt from disclosure as "criminal investigative information" under the RTKL includes: statements compiled by district attorneys, forensic reports, and reports of police, including notes of

interviews with victims, suspects and witnesses assembled for the specific purpose of investigation. *See, e.g.*, *Barros v. Martin*, 92 A.3d 1243, 1250 (Pa. Cmwlth. 2014) (criminal complaint file, forensic lab reports, polygraph reports and witness statements rise to level of criminal investigative information exempt from disclosure); *Coley*, 77 A.3d at 697 (witness statements compiled by District Attorney's office are criminal investigative records exempt from disclosure); *Pennsylvania State Police v. Office of Open Records,* 5 A.3d 473, 478-79 (Pa. Cmwlth. 2010) (incident report prepared by police with notes of interviews of alleged victims and perpetrators assembled during investigation exempt as criminal investigative information); *Mitchell v. Office of Open Records*, 997 A.2d 1262, 1265-66 (Pa. Cmwlth. 2010) (record pertaining to PSP's execution of search warrant was criminal investigation exempt from disclosure under Section 708 of the RTKL). With regard to the MVRs requested by Grove in this case, we must determine whether the video aspects generally depict a systematic inquiry or examination into a potential crime.

In arguing such video recordings generally should be exempt from public disclosure as "criminal investigative records," PSP relies on its duty to "enforce the laws regulating the use of the highways of this Commonwealth." Brief of Appellant at 18, *quoting* 71 P.S. §250(g). PSP concludes its inquiry into whether a violation of the Vehicle Code occurred is an investigation, and any MVR capturing such investigation is a "criminal investigative record" exempt from disclosure under Section 708 of the RTKL. *Id.*

The Rozier Affidavit presented by PSP explains the use of MVRs is widespread, noting "MVRs are typically activated when a trooper activates his or her emergency

lights or siren." Rozier Affidavit at ¶ 14. There are situations when a trooper will activate lights and sirens in non-investigative situations, including: "directions to motorists in a traffic stop or at an accident scene, police pursuits and prisoner transports." *Grove*, 119 A.3d at 1108, *citing* the Rozier Affidavit at ¶¶ 10, 16. Furthermore, in describing the reasons for retaining MVR files PSP acknowledges it anticipates using its MVRs in various situations, including civil, criminal, quasi-criminal, administrative enforcement or disciplinary proceedings. Rozier Affidavit at ¶ 17. Moreover, the Rozier Affidavit specifically provides an MVR will be retained when a person captured on the recording notifies PSP of her intent to use it in civil proceedings. *Id.* This latter point supports a conclusion that MVRs do not always "relate to" or "result in" criminal investigations such that they should be *per se* exempt from disclosure under Section 708 of the RTKL. The Commonwealth Court therefore correctly determined the MVRs are not exempt from disclosure as a general rule. *See Grove*, 119 A.3d at 1108 ("MVRs themselves are therefore not investigative material or videos, investigative information, or records relating or resulting in a criminal investigation exempt from disclosure under Section 708 of the RTKL. . . .").

We recognize MVRs will likely also capture criminal investigations, such as "In-progress Vehicle and Crimes Code violations;" "Field interviews, interrogations, and intoxication testing;" and "Searches of vehicles and/or persons." Rozier Affidavit at ¶ 16. However, the RTKL specifically places the burden on PSP as the agency seeking an exemption to demonstrate a record falls within such exemption. 65 P.S. §67.708(a)(1). PSP's position that MVRs are generally exempt and always contain criminal investigative material essentially ignores that burden. Accordingly, we hold

whether an MVR contains criminal investigative material must be determined on a case-by-case basis.

We now consider the more specific question of whether Trooper Vanorden's MVR and the video aspects of Trooper Thomas's MVR relate to or result in a criminal investigation and are thus protected from disclosure.[18] It is clear from PSP's own evidence the "MVRs at issue do not depict the accident itself," and instead show the

---

[18] As we have noted, the issues upon which this Court granted review are limited to the video aspects of the MVRs; although the Commonwealth Court found exempt material in the audio aspects of Trooper Thomas's MVR, and consequently redacted it, the propriety of that finding and subsequent redaction has not been raised in this appeal. *Grove*, 119 A.3d at 1109-10. Chief Justice Saylor concludes that Trooper Thomas's MVR, which was found to include investigative material in its audio aspect, is therefore not a "public record" as defined in Section 102. *See Concurring and Dissenting Opinion*, slip op. at 2-3 (Saylor, C.J.), *citing* 65 P.S. §67.102. Respectfully, this conclusion is not supported by the plain language of the RTKL. Section 706 allowing redaction specifically applies to "public" records which may contain some information that is subject to disclosure and other information that is exempt from disclosure. *See* 65 P.S. § 67.706 (providing when public record contains information subject to access and information not subject to access, the agency **shall redact** information not subject to access and grant access to unredacted information) (emphasis added); *see also Department of Corrections v. St. Hilaire*, 128 A.3d 859, 866 (Pa.Cmwlth. 2015) (fact that public records contained some exempt medical information did not transform records into non-public records; records can be redacted to exclude exempt information under Section 706). Holding that exemption of even a minor portion of a public record would re-categorize it into a non-public record in its entirety would eliminate the need to allow redaction at all and render Section 706 meaningless with respect to public records. Our interpretation endeavors to give effect to all the provisions of a statute, as we must. *See* 1 Pa.C.S. § 1921(a); *see also Holland v. Marcy*, 883 A.2d 449, 455-56 (Pa. 2005) ("In construing a statute, the courts must attempt to give meaning to every word in a statute as we cannot assume that the legislature intended any words to be mere surplusage."). Moreover, our interpretation is not at odds with distinguishable Commonwealth Court case law which has held some records found to be entirely exempt under Section 708 do not constitute public records. *See e.g.*, *Saunders v. Dep't of Corrections*, 48 A.3d 540 (Pa. Cmwlth. 2012) (requester sought records from the Department of Corrections which were subject to five different exemptions, and as such, were entirely exempt from disclosure under Section 708; records were not "public records" due to the applicable exemptions). *Id.* at 543.

---

troopers observing the crash scene and engaging with the drivers and bystanders. Rozier Affidavit at ¶¶ 10-11, 19.  The video depiction presents nothing more than what a bystander would observe.  PSP describes the depiction as a criminal investigation because it resulted in the issuance of citations for failure to wear a seatbelt and failure to yield the right of way when entering or crossing a roadway.  But PSP acknowledges the citations were based upon the "**statements** and **accounts** of the individuals involved in, or witness to the accident."  Brief of Appellant at 18 (emphasis added); s*ee also* Rozier Affidavit at ¶¶ 9, 13, 19-20 (Trooper Thomas spoke to operators and bystanders before issuing citations).  It is thus clear Trooper Thomas acquired the information necessary to issue the citations through his conversations with witnesses and drivers, and the fact and nature of the Vehicle Code violations could not have been garnered from the video-only aspect of the MVRs.

PSP simply does not explain how the video portion of the MVRs captured any criminal investigation.  In fact, PSP concedes the only potentially investigative information consisted of the verbal statements captured on Trooper Thomas's MVR, which the Commonwealth Court expressly ordered should be redacted prior to release of the MVRs.  Accordingly, we find no error in the Commonwealth Court's decision that Trooper Vanorden's MVR and the video aspects of Trooper Thomas's MVR are not exempt from release to Grove pursuant to Section 708(b)(16) of the RTKL, and affirm that portion of the court's order.

ii. *CHRIA*

We now consider whether disclosure of the MVRs, both generally and specifically, is prohibited by CHRIA.  CHRIA prevents the disclosure of "investigative

information" to the public. 18 Pa.C.S. §9106(c)(4). CHRIA defines "investigative information" as: "Information assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information." 18 Pa.C.S. §9102. To determine if CHRIA prevents disclosure, we first consider if MVRs always constitute "investigative information" as defined by CHRIA.

PSP's own evidence established MVRs are created when a light or siren is activated, and capture many events, including routine traffic stops, patrol vehicle travel and any other event a state trooper deems appropriate to record. Rozier Affidavit at ¶¶ 14-16. In addition, the Rozier Affidavit clearly states MVRs are created in many instances that plainly do not involve criminal activity, and may ultimately be used in civil proceedings, administrative enforcement and disciplinary actions. Rozier Affidavit at ¶ 17. Thus, MVRs do not, generally, constitute *per se* protected "investigative information," and therefore the question of whether information captured on a particular MVR is to be excluded from public access under CHRIA must be determined on a case-by case basis.[19]

---

[19] Although Justice Mundy states she agrees with our conclusion the determination must be made on a case by case basis, she nevertheless essentially concludes, as a practical matter, that every record like the one at issue here includes information barring disclosure under the RTKL and CHRIA. Concurring and Dissenting Opinion (Mundy, J.) at 2, 4. Under this interpretation, Justice Mundy notes the video portions of the MVRs "**may** well depict a witness's demeanor, physical condition, and gestures, which give context to the statements provided," and thus "**may** depict 'steps carried out in a criminal investigation.'" *Id.* at 4-5 (emphasis added). This view improperly reduces the PSP's statutory burden under the RTKL and CHRIA, and also disregards the Commonwealth Court's determinations supported by the record, including its determination the video and audio aspects in this particular case could be treated separately. The PSP had the burden to demonstrate the video aspects of the MVRs (continued…)

With respect to the specific MVRs at issue here, our inquiry is whether the video portions contain investigative information under CHRIA such that they should be exempt from disclosure. As we have determined with respect to PSP's claims under the RTKL, we hold the Commonwealth Court did not err in concluding the CHRIA does not preclude disclosure either. The court correctly determined the only potential "investigative information" on these MVRs is contained in the audio portion of witness interviews on Trooper Thomas's MVR. As this potentially investigative aspect of the MVRs was ordered redacted, and neither PSP nor Grove challenged that order before this Court, we affirm the Commonwealth Court's decision on this issue.

### III. Redacted MVR as "New Record"

We now consider whether the ordered redaction of the audio portion of Trooper Thomas's MVR constitutes the creation of a "new record" in violation of Section 705 of the RTKL. Section 706 of the RTKL expressly requires an agency to redact information

---

(…continued)

should be exempt from public access. *See* 65 P.S. § 67.708(a)(1). The only evidence supplied by the PSP in an attempt to meet this burden is the Rozier Affidavit, which acknowledged the investigative material resided in the audio aspects only, *i.e.* in recorded statements made to Trooper Thomas. Under these circumstances, we conclude the Commonwealth Court's holding that the video aspects do not contain exempt investigative material is sound. *See Grove*, 119 A.3d at 1109 (noting the MVR does not show "any measurements, collection of evidence, physical inspection or analysis of what the accident scene showed"). It is also noteworthy that the Rozier Affidavit describes the investigation not as criminal in nature, but as a "crash investigation" and as an "investigation of [a] vehicle accident." *See* Rozier Affidavit at ¶¶ 13, 19. Respectfully, the record presented by PSP in this matter does not support a finding that any of the indicia identified by Justice Mundy as depicting a criminal investigation actually were recorded on the video portion of the MVRs here, and we reject the suggestion this statutory requirement is immaterial. Concurring and Dissenting Opinion (Mundy, J.) at 5 n. 4.

not subject to public access from a public record. 65 P.S. §67.706 ("If an agency determines that a public record, legislative record or financial record contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. . . . The agency may not deny access to the record if the information which is not subject to access is able to be redacted."). At the same time, Section 705 of the RTKL provides: "an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. §67.705.

PSP first asserts the MVRs are not "public records" as described in Section 706, and the Commonwealth Court thus erred in allowing their release after redaction. PSP argues that, since the Commonwealth Court found the audio portion of the MVR contained information related to a criminal investigation, it should have further determined the entire MVR is exempt from disclosure. Brief of Appellant at 31. PSP further claims that, in ordering the audio portions of the MVR be redacted, the Commonwealth Court is improperly requiring it to create a "new record" in violation of Section 705 of the RTKL. According to PSP, redacting an MVR is distinct from redacting paper records. PSP argues redaction of the MVRs as directed here involves cutting parts of the video or removing parts of the audio which does not simply alter an existing record, but creates an entirely new record in violation of Section 705 of the RTKL. PSP argues the extent of the modification ordered by the Commonwealth Court

is a factual inquiry requiring remand to determine if the modification violates Section 705 of the RTKL.[20]  Brief of Appellant at 33.

Grove responds by arguing the redaction of information from a record does not create a new record under Section 705.  Grove notes Section 706 specifically permits redaction of records, and requires agencies to redact exempt information from records that are otherwise subject to disclosure.  Grove further argues the removal of some of the audio portions of the MVR is no more a "creation" of a record than using a marker to eliminate text from a paper document.  Brief of Appellee at 16.

The OOR also argues Section 706 of the RTKL specifically authorizes that agency records which include both public and exempt content can properly be redacted for release of the publicly accessible content.  OOR *Amicus* Brief at 13.  OOR further argues, as a matter of statutory construction, such a statutorily permissible redaction of records under Section 706 can never result in the improper "creation" of a record under Section 705, and if it did, Section 706 would be rendered meaningless.  *Id.* at 15-16.  *See also* PNA and RCFP *Amicus* Brief at 12 (redaction of MVRs cannot result in improper creation of new record under Section 705 of RTKL because such interpretation would render meaningless Section 706 of RTKL, which specifically permits such redaction; such an interpretation would also prevent access to certain agency records based on format in which they were created).

---

[20] In support of PSP, *amici* PSATS and CCAP argue the required redaction, which may include blurring faces or altering voices, also poses an undue burden and expense for agencies.  *Amici* Brief at 13.  Appellee Grove responds PSATS and CCAP overstate the potential burden upon agencies in redacting MVRs and, in any event, such argument should not be considered as it goes beyond the scope of the issues and record presented.  Brief of Appellee at 16-17.

As indicated by the parties' arguments, this issue involves the application and interplay of Sections 705 and 706 of the RTKL, which simultaneously prohibit the creation of "new records" while expressly requiring the release of redacted versions of agency records that contain both public and non-public information. In determining whether a court may order the redaction of certain portions of PSP's MVRs without improperly resulting in the creation of a new record, we consider relevant principles of statutory construction. It is central to our analysis that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. §1921(a). Further, in ascertaining the intent of a statute, we presume "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. §1922(1). We further presume "the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. §1922(2). Construing Sections 705 and 706 of the RTKL with these principles in mind, while also giving effect to both statutes as we must, it is without question redaction of the MVRs under Section 706 to protect exempt material does not result in the creation of a new record in violation of Section 705. Adoption of PSP's argument to the contrary would render Section 706 meaningless in derogation of the express principles of the Statutory Construction Act, as it would result in the prohibition of redaction of otherwise publicly accessible records, and render public information exempt from disclosure.

Under the circumstances, it is plain that redaction of the audio aspects of an existing MVR does not constitute the creation of a new record in violation of Section 705. PSP need not, for example, gather additional information and compile it in a new way prior to redaction in order to comply with the Commonwealth Court's directive. *Cf.*

*McGill*, 83 A.3d at 481 (Section 705 "precludes a requester from being able to 'shanghai' government employees to create a record when one does not exist and take them away from carrying out their normal responsibilities.").[21] The redaction envisioned here is analogous to the printed copy of an existing, original agency document which is delivered to the requester with black markings blocking exempt material. We therefore hold the Commonwealth Court's order does not mandate PSP to create a new record in violation of Section 705.[22]

---

[21] In *McGill*, the requester sought from PSP a database of all officers accredited by Municipal Police Officers' Education and Training Commission (MPOETC). 83 A.3d at 478. While MPOETC maintained a database of all officers, the database did not include the duties of the officers, including which officers were involved in undercover and covert operations — information expressly exempt from disclosure under the RTKL. *See* 65 P.S. §67.708(b)(6)(iii). The OOR ordered PSP to redact the information of officers involved in undercover and covert operations, but PSP stated there was no database already in existence that included information as to officers' work assignments, including undercover and covert assignments. 83 A.3d at 481. PSP claimed in order to comply with the OOR's redaction order, it would have to gather and compare information from over 1,100 municipal agencies regarding over 22,000 officers, produce a new document listing all officers, and then redact those names not subject to disclosure. The court found such extensive reworking and compilation of information constituted the creation of a new record in violation of Section 705 of the RTKL and thus reversed the OOR's order as requiring the construction of a new and larger database prior to redaction. *Id.* at 481-82.

[22] PSP's additional argument that remand is necessary to determine the extent of the redaction, and if such redaction would violate Section 705 of the RTKL, is contrary to the precise findings of the Commonwealth Court, which clearly identified the extent of the required redaction as the audio portion of the witness interviews on Trooper Thomas's MVR. 119 A.3d at 1109. In addition, the Rozier Affidavit clearly described the protected audio portion: "The MVR depicts Trooper Thomas interviewing the operators of the vehicles. Trooper Thomas obtained the operator's license, registration and insurance information. Additionally, Trooper Thomas had an extensive conversation with the operator of the truck concerning the status of his truck classification, with assistance from Trooper Vanorden via the telephone." Rozier Affidavit at ¶11. Accordingly, the directive from the Commonwealth Court, in connection with the evidence introduced by PSP, clearly identifies what information must be
(continued…)

## IV. Wiretap Act[23]

We now turn to the question of whether provisions of the Wiretap Act apply to the audio component of MVRs, such that "public disclosure of MVR footage under the RTKL" is prohibited. Brief of Appellant at 38. The Wiretap Act prohibits the intentional interception of wire, electronic or oral communications, and also prohibits the intentional disclosure of such intercepted communications.[24] PSP focuses its argument on its

---

(…continued)
redacted pursuant to Section 706 of the RTKL and remand on this issue is not warranted.

[23] As noted above, PSP raised this defense to disclosure for the first time in Commonwealth Court, and that court determined the issue was not waived because an agency "cannot waive third parties' privacy rights." 119 A.3d at 1110. The court apparently focused on the privacy rights of the individuals — other than the troopers — who were recorded on the MVRs, and concluded any failure by PSP to raise and protect those rights in the first instance should not be dispositive of the issue. As the parties did not challenge the Commonwealth Court's ruling on waiver, and as we granted review of the substantive question presented regarding the Wiretap Act, we do not express an opinion on this particular point.

[24] The Act provides a "person" is guilty of a felony in the third degree if he:

> 1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;
>
> (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or
>
> (3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

(continued…)

claim the MVRs contain "oral communications." An "oral communication" is defined, in pertinent part, as: "Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. §5702. The Wiretap Act also provides exceptions to the prohibition of interception and disclosure of oral communications as follows:

> It shall not be unlawful and no prior court approval shall be required under this chapter for:
>
>     *        *        *
>
> (16) A law enforcement officer, whether or not certified under section 5724 (relating to training), acting in the performance of his official duties to intercept and record an oral communication between individuals in accordance with the following:
>
>> (i) At the time of the interception, the oral communication does not occur inside the residence of any of the individuals.
>>
>> (ii) At the time of the interception, the law enforcement officer:
>>
>>> (A) is in uniform or otherwise clearly identifiable as a law enforcement officer;
>>>
>>> (B) is in close proximity to the individuals' oral communication;
>>>
>>> (C) is using an electronic, mechanical or other device which has been approved under section 5706(b)(4) (relating to exceptions to prohibitions in possession, sale, distribution, manufacture or advertisement of electronic, mechanical or other devices) to intercept the oral communication; and

---

(…continued)

18 Pa.C.S. §5703. The PSP is a "person" subject to the statute's prohibitions. 18 Pa.C.S. §5702 ("Any employee, or agent of the United States or any state or political subdivision thereof and any individual, partnership, association, joint stock company, trust or corporation.").

(D) informs, as soon as reasonably practicable, the individuals identifiably present that he has intercepted and recorded the oral communication.

18 Pa.C.S. §5704(16).

PSP argues the provisions of the Wiretap Act prohibit disclosure of the redacted MVRs, regardless of whether the persons whose oral communications were recorded had notice as required by the Wiretap Act. PSP claims even if the individuals captured on the MVRs had notice of the recording, such notice does not act to vitiate their privacy interests and allow release of the MVRs to the public under the RTKL. PSP submits Section 5704(16) specifically applies to MVRs to prevent the disclosure of both the audio and video aspects of MVRs to the public. Reply Brief of Appellant at 7-8. PSP argues the Wiretap Act protects privacy by providing limited circumstances in which recorded oral communications can be disclosed, and disclosure to the public by an agency under the RTKL is not included in those limited circumstances. PSP relies on Section 5749 of the Wiretap Act to argue an MVR, as a recording under Section 5704(16) of the Wiretap Act, can be disclosed only when it is: (1) an "investigative disclosure;" (2) an "evidentiary disclosure" or (3) "used for training purposes upon the consent of all participants," and that none of these exceptions apply here. Brief of Appellant at 36, *citing* 18 Pa.C.S. §§5717, 5721.1, 5749 (b)(1) and (2).[25]

---

[25] Section 5749(b) of the Wiretap Act provides:

    (b) Disclosure.--In addition to any disclosure authorized under sections 5717 [regarding Investigative disclosures] and 5721.1 [regarding evidentiary disclosures], any recording maintained:

(continued…)

PSP further notes the RTKL prohibits disclosure of documents if such disclosure will violate another federal or state law. Brief of Appellant at 36, *citing* 65 P.S. §67.3101.1 ("If the provisions of this act regarding access to records conflict with any other federal or state law, the provisions of this act shall not apply."). PSP thus concludes the Wiretap Act protects the privacy of those recorded by preventing disclosure of recordings, including MVRs. PSP asserts the Commonwealth Court erred in determining, in the event the witnesses and drivers captured on the MVR did not have notice of the recording, their privacy interests will be adequately protected if their oral communications are redacted before release to the requester.

In response, Grove argues the Wiretap Act does not prohibit the release of the MVRs because the witnesses and drivers could not have had any reasonable expectation of privacy as they were being questioned at the scene, and the MVRs therefore do not contain any protected communications. She first notes the Wiretap Act prevents the interception of "oral communications" as defined in Section 5702, which expressly requires that individuals have a reasonable expectation of privacy before the communications are subject to the Wiretap Act's prohibitions. Grove argues the video aspects of the MVRs are not subject to the Wiretap Act as the individuals depicted could

_____

(…continued)

> (1) Under subsection (a)(4) [for use in a civil action] shall be disclosed pursuant to an order of court or as required by the Pennsylvania Rules of Civil Procedure or the Pennsylvania Rules of Evidence; and
>
> (2) Under subsection (a)(5) [for training purposes] shall be disclosed consistent with written consent obtained from the law enforcement officer and all participants.

18 Pa.C.S. §5749(b).

not have had an expectation of privacy in a video-only recording of their activity in a public place; the video aspects therefore do not contain "oral communications" within the purview of the Wiretap Act. Brief of Appellee at 12, *citing Agnew v. Dupler*, 717 A.2d 519 (Pa. 1998) (police officers did not have reasonable expectation of privacy in squadroom conversations, and statements made in squadroom did not meet definition of "oral communications" under Wiretap Act). Further, Grove notes the troopers' communications are not protected by the Wiretap Act as they had notice of the recordings, and had no reasonable expectation of privacy while knowingly performing their duties in public. Grove concludes the other individuals on the scene had no expectation of privacy in their conversations with the troopers, as there is no expectation the conversation would remain private — especially when the conversation occurs on a public roadway.[26] Brief of Appellee at 13-14.

---

[26] In support of Grove, PNA and RCFP assert the Wiretap Act does not apply to MVRs as a general class of records. *Amici* first argue (without citation) that video is not covered by the Wiretap Act. They also reiterate Grove's argument the audio portions of the MVRs are not subject to the Wiretap Act because the individuals recorded had no reasonable expectation of privacy. PNA and RCFP Brief at 22, *citing* 18 Pa.C.S. §5702; *Schwartz v. Dana Corp./Parish Div.* 196 F.R.D. 275 (E.D. Pa. 2000) (in determining what constitutes oral communication under Wiretap Act court must consider whether speaker had an expectation of privacy). Moreover, *Amici* argue PSP's reliance on Section 5704(16) of the Wiretap Act is misplaced because the Wiretap Act, as a whole, does not apply when there is no reasonable expectation of privacy in a conversation. *Amici* finally claim that even if the Wiretap Act applies to some of the information on the MVRs, the recordings cannot be withheld in their entirety because the RTKL specifically permits non-public information to be redacted from a record and the remainder of the record to be released. *Id.* at 25, *citing* 65 P.S. § 67.706 (agency has obligation to redact non-public portions of records).

Amicus OOR similarly argues the plain language of the Wiretap Act only restricts various uses of oral communications, the Commonwealth Court correctly held the Wiretap Act does not prevent access to video portions of the MVRs, and properly (continued…)

In considering the application of the Wiretap Act to the MVRs at issue here, we note the Commonwealth Court focused on whether the individuals recorded "had notice of the recording or any expectation that the interview was not subject to recording." 119 A.3d at 1111. In doing so, the court combined two different provisions of the Wiretap Act, *i.e.*, the definition of protected "oral communications" which requires an "expectation that such communication is not subject to interception under circumstances justifying such expectation," 18 Pa.C.S. §5702, and a statutory exception to the prohibition of interception where an individual has notice her oral communications are being recorded. 18 Pa.C.S. §5704(16)(ii)(D). The proper analysis, however, must begin with a showing that "oral communications" are involved in the first instance; we need not reach the second question regarding notice if the individuals recorded could not have had a justifiable expectation the communications would not be intercepted. *See, e.g.*, *Henlen*, 564 A.2d 905 (no violation of Wiretap Act where state trooper could not have had justifiable expectation conversation would not be intercepted when he interrogated prison guard suspected of theft and prison guard secretly recorded interrogation; recording was not oral communication subject to Wiretap Act); *Gunderman*, 505 A.2d 1112 (no violation of Wiretap Act where claimant surreptitiously recorded unemployment compensation hearing; no "legitimate expectation of privacy" existed at such proceedings).

---

(…continued)
remanded the matter to the OOR for consideration of issues related to the audio portions of the MVR. OOR *Amicus* Brief at 17-18.

In *Agnew*, this Court summarized the inquiry as follows: "whether the speaker had a specific expectation that the contents of the discussion would not be intercepted and whether that expectation was justifiable under the existing circumstances." 717 A.2d at 523. The Court further noted, in "determining whether the expectation of non-interception was justified under the circumstances of a particular case, it is necessary for a reviewing court to examine the expectation in accordance with the principles surrounding the right to privacy, for one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy." *Id.* In this case, we must decide whether: (1) the MVR contains an oral communication; (2) the individuals whose communication is captured on the MVR had an expectation the communication would not be intercepted; (3) the individuals' expectation was justifiable under the circumstances; and (4) there was an attempt to intercept or a successful interception of the communication. *See Agnew*, 717 A.2d at 522 (claimant alleging Wiretap Act violation must show: "(1) that he engaged in a communication; (2) that he possessed an expectation that the communication would not be intercepted; (3) that his expectation was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so").

Trooper Thomas's MVR included communications between the troopers themselves (who cannot possibly have had an expectation their conversations were not subject to interception), and between the troopers and the witnesses and drivers. Our review of the record demonstrates these other speakers also could not have had a justifiable expectation their conversations would not be intercepted, and accordingly, the MVRs do not contain any "oral communications" protected under the Wiretap Act. The

conversations occurred in broad daylight at the scene of an accident on a public roadway, to which state police officers responded. The conversations took place within earshot and easy view of bystanders or passersby. In fact, Grove's position statement submitted to the OOR includes her own observations and even her paraphrasing of the conversations between the drivers and the troopers. Position Statement of Michelle Grove, dated May 30, 2014 (discussing troopers' actions and conversations at the accident scene, including recounting Trooper Thomas's statements to one of the drivers, about what "he 'thought' happened and tried to convince [the driver] that she was at fault."). It is clear the individuals at the scene could have had no reasonable expectation of privacy, or any justifiable expectation that their statements and images were not being captured on MVRs, or by any number of cellphones for that matter. Under the circumstances, we conclude disclosure of the MVRs pursuant to the RTKL does not violate the Wiretap Act. Accordingly, we reverse that portion of the Commonwealth Court's order that suggested additional findings with respect to notice are warranted on remand. We affirm the Commonwealth Court's order in all other respects.

Order affirmed in part and reversed in part. Matter remanded for further proceedings consistent with this opinion.


Justices Baer, Todd, Donohue and Wecht join the opinion.

Justice Wecht files a concurring opinion in which Justice Todd joins.

Chief Justice Saylor files a concurring and dissenting opinion.

Justice Mundy files a concurring and dissenting opinion.