IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andy Buxton,                        :
                    Petitioner     :
                                    :
        v.                          : No. 253 C.D. 2020
                                    : SUBMITTED: August 7, 2020
Office of Attorney General,         :
                    Respondent      :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                            FILED:  October 21, 2020

Andy Buxton (Buxton), *pro se*, petitions this Court for review of the February 21, 2020 Final Determination of the Appeals Officer (Appeals Officer) for the Pennsylvania Office of Attorney General (OAG), who denied Buxton's request for access to documents under the Right-to-Know Law (RTKL).[1]    After review, we affirm.

## I.  Background

Buxton is an inmate currently incarcerated at the State Correctional Institution located in Mercer, Pennsylvania.  On November 12, 2019, Buxton submitted a RTKL request to the OAG seeking copies of the following records:

1. Emails and/or correspondences between Iva C. Dougherty and Katherine Wymard from the years 2013-2016 which concern the following:

   a. Delegation of power to Katherine Wymard to file "criminal informations from transaction or activity in regards of grand jury proceedings,

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.701 – 67.3104.

applications, transactions and/or activity in Allegheny County, [Pennsylvania]";

    b. The date Iva C. Dougherty delegated powers to Katherine Wymard and the date those powers expired; and

    c. The "number of extensions approving wiretaps and electronic surveillance."

2. The date when "delegation of Iva C. Dougherty expired or her term was terminated," pursuant to Sections 201(c) and 205(d) of the Commonwealth Attorneys Act;[2]

3. Activity pursuant to Section 5772(a) of the Wiretapping and Electronic Surveillance Control Act (Wiretap Act),[3] "in which Iva C. Dougherty gave approval to intercept James Huey and Richard Miller[;]"

4. Activity "of assure custody[4] of the recorded evidence obtained as a result of the communications which you have approved" for the years 2012-2016, pursuant to Sections 5706(b) and 5714(a) of the Wiretap Act;[5] and

---

[2] Act of October 15, 1098, P.L. 950, *as amended*, 71 P.S. §§ 732-201(c), 732-205(d). Section 201(c) of the Commonwealth Attorneys Act provides for the appointment of deputy attorneys general. Section 205(d) of the Commonwealth Attorneys Act permits the appointment of special deputies when necessary for the prosecution of a criminal action or appeal.

[3] Section 5772(a) permits the OAG or his designee to make application for an order, or extension of an order, for the disclosure of mobile communications tracking information. 18 Pa.C.S. § 5772(a).

[4] This Court was challenged in comprehending much of Buxton's requests and brief. Despite great effort, this Court was unable to interpret the meaning of this specific request.

[5] Section 5706(b) of the Wiretap Act sets forth the procedures for the possession and use of electronic surveillance devices by the OAG. 18 Pa.C.S. § 5706(b). Section 5714(a) of the Wiretap Act concerns the recording of intercepted communications. 18 Pa.C.S. § 5714(a).

5. All records and communications to Richard Miller "used by him to possess the devices designated by Iva C. Dougherty to either Katherine Wymard or Richard Miller or any other staff member in the OAG's office in North Huntingdon," Pennsylvania.

Certified Record (C.R.) at 1-2.

Buxton's request was granted in part and denied in part by the OAG's RTKL Officer on December 26, 2019. *Id.* at 7. As to Item 1(a)-(c), the RTKL Officer found that the records requested did not exist and, pursuant to Section 705 of the RTKL,[6] the OAG was not required to create them. *Id.* With regard to Item 2, the RTKL Officer granted Buxton's request and noted that "delegation of Iva C. Dougherty expired" on March 28, 2014. *Id.* at 8. The records described in Items 3-5 were deemed exempt from disclosure under Sections 708(b)(16)(ii), (iv) of the RTKL[7] as records from a criminal investigation. *Id.* The RTKL Officer noted that disclosure of these records was further prohibited by Section 9106(c)(4) of the Criminal History Record Information Act (CHRIA)[8] and Sections 5715 and 5717 of the Wiretap Act.[9] *Id.* at 8-9.

---

[6] 65 P.S. § 67.705.

[7] 65 P.S. §§ 67.708(b)(16)(ii), (iv).

[8] 18 Pa.C.S. § 9106(c)(4). Section 9106(c)(4) of CHRIA relevantly prohibits the dissemination of investigative information to any individual unless the individual requesting the information is from a criminal justice agency seeking the information in connection with his duties.

[9] 18 Pa.C.S. §§ 5715, 5717. Section 5715 of the Wiretap Act mandates that wiretap applications, final reports, orders, supporting papers, and monitor's records must be sealed by the court. Section 5717 of the Wiretap Act limits disclosure of the contents of wire, electronic, or oral communications by an investigative or law enforcement officer to another investigative or law enforcement officer for the performance of his or her duties or when giving testimony in a criminal proceeding.

Buxton appealed the RTKL Officer's decision to the OAG's RTKL Appeals Officer, arguing that the OAG acted in bad faith when searching for the records sought in Item 1(a)-(c). *Id.* at 11. Buxton further argued that records with "some connection" to a criminal proceeding were not automatically exempt from disclosure under the RTKL, CHRIA, or the Wiretap Act, and the records could be redacted, if necessary. *Id.*

The RTKL Officer denied her search for records was conducted in bad faith. *Id.* at 19. Rather, her review of email and electronic records revealed no records existed that were responsive to Items 1(a)-(c) of Buxton's request. *Id.* The RTKL Officer submitted an affidavit in which she attested to the steps taken during her search for the records and she confirmed their nonexistence. *Id.* at 39-41. She related that Ms. Wymard also confirmed no emails or hard-copy correspondence existed relating to a delegation of powers from Ms. Dougherty and the date such powers were delegated or relating to the "number of extensions approving wiretaps and electronic surveillance." *Id.* at 40.

With regard to Items 3-5 of Buxton's request, the RTKL Officer reiterated that these records related to a criminal investigation and were therefore exempt from disclosure under the relevant provisions of the RTKL, CHRIA, and the Wiretap Act. *Id.* at 19. In support of her decision to deny access to these records, the RTKL Officer submitted an affidavit from Ms. Wymard, who summarized her role as the lead prosecutor in the criminal investigation of Buxton, which took place following the receipt of information from a confidential informant (CI) that Buxton was dealing in illegal narcotics. *Id.* at 43-45. Pertinently, the criminal investigation included aerial and physical surveillance of Buxton and electronic surveillance of telephone calls between Buxton and the CI. *Id.* at 44. Ms. Wymard opined that

4

permitting the review of investigatory records by individuals outside the OAG would undermine the investigative process and would be detrimental to the future investigation of criminal conduct. *Id.* at 44. Ms. Wymard further averred that, under CHRIA and the Wiretap Act, she must refrain from disclosing investigative information. *Id.* The RTKL Officer offered to make the excluded documents available for *in camera* review, at the discretion of the Appeals Officer. *Id.* at 21.

The Appeals Officer denied Buxton's appeal on February 21, 2020. As to Item 1(a)-(c), the Appeals Officer found that Buxton offered no evidence beyond his own speculation that the records he sought existed. *Id.* at 48. Based on the RTKL Officer's affidavit, the Appeals Officer determined that the OAG satisfied its burden of showing the requested records did not exist and the OAG was not required to create them. *Id.* at 48.

As to the remaining records sought in Items 3-5, the Appeals Officer agreed their disclosure was barred by the relevant provisions of the RTKL and CHRIA.[10] *Id.* An *in camera* review of the records was deemed unnecessary, as the records Buxton sought were protected in their entirety. This appeal followed.

## II. Issues

On appeal,[11] Buxton challenges the Appeals Officer's determination that the records requested in Items 1(a)-(c) did not exist. Buxton further argues that disclosure of the remaining records set forth in his request would not jeopardize a criminal investigation that has already concluded.

---

[10] The Appeals Officer did not reach a conclusion regarding the RTKL's exclusion of records under the Wiretap Act.

[11] This Court's standard of review of determinations made by appeals officers under the RTKL is *de novo*, and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

5

### III. Analysis

### A. Creation of Record

First, we address whether the Appeals Officer properly denied Buxton's request for emails and correspondence on the basis they did not exist. Buxton asserts that the alleged nonexistence of these records "is absurd to contemplate." Buxton's Br. at 7.

"Record" is defined in Section 102 of the RTKL as:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

65 P.S. § 67.102. A record in the possession of a Commonwealth agency shall be presumed to be a public record.[12] When responding to a records request, however, an agency is not required to create a record which does not currently exist.[13] An affidavit that the subject record does not exist is sufficient to satisfy the agency's burden of demonstrating the nonexistence of the record in question. *Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010).

Presently, the records sought are as follows:

1. Emails and/or correspondences between Iva C. Dougherty and Katherine Wymard from the years 2013-2016 which:

---

[12] Section 305(a) of the RTKL, 65 P.S. § 67.305(a).

[13] Section 705 of the RTKL, 65 P.S. § 67.705.

6

a. Delegate power to Katherine Wymard to file "criminal informations from transaction or activity in regards of grand jury proceedings, applications, transactions and/or activity in Allegheny County, [Pennsylvania]";

b. Establish the date Iva C. Dougherty delegated powers to Katherine Wymard and the date those powers expired; and

c. The "number of extensions approving wiretaps and electronic surveillance."

C.R. at 1.

In response to Buxton's initial request, the RTKL Officer searched the OAG's records and determined that the requested emails and correspondence did not exist. *Id.* at 7. Accordingly, the RTKL Officer did not grant Buxton's request for access to these records. *Id.* Following Buxton's appeal, the RTKL Officer submitted an affidavit which detailed the process she undertook to locate the subject emails and correspondence. *Id.* at 39-41. The RTKL Officer conducted a thorough review of Ms. Dougherty's and Ms. Wymard's emails and was unable to locate any related to a delegation of powers by Ms. Dougherty or the date of such a delegation. *Id.* at 40. The RTKL Officer was likewise unable to locate any emails related to the "number of extensions approving wiretaps and electronic surveillance." *Id.* The RTKL Officer subsequently contacted Ms. Wymard, who confirmed that no emails or hard-copy correspondence existed which related to a delegation of powers by Ms. Dougherty, the date powers were delegated, or the number of extensions approving wiretaps and electronic surveillance. *Id.*

Buxton's sole support for his argument that such records exist is his assertion that it is "absurd" to think otherwise. This speculation is not sufficient to rebut the

7

evidence presented by the RTKL Officer, which establishes that the emails and correspondence sought in Buxton's RTKL request do not exist.

## B. Criminal Investigative Records

Next, Buxton argues that disclosure of the remaining records set forth in his RTKL request will not jeopardize the institution, progress, or result of a criminal investigation that has already concluded. He does not dispute that the records he requested relate to a criminal investigation. The records Buxton seeks concern the following:

1. Activity pursuant to Section 5772(a) of the Wiretap Act, "in which Iva C. Dougherty gave approval to intercept James Huey and Richard Miller";

2. Activity "of assure custody of the recorded evidence obtained as a result of the communications which you have approved" for the years 2012-2016, pursuant to Sections 5706(b) and 5714(a) of the Wiretap Act; and

3. All records and communications to Richard Miller "used by him to possess the devices designated by Iva C. Dougherty to either Katherine Wymard or Richard Miller or any other staff member in the OAG's office in North Huntingdon," Pennsylvania.

C.R. at 1-2.

The OAG asserts that the activity and communications referenced in Buxton's RTKL request relate directly to the OAG's use of surveillance equipment in the investigation and prosecution of Buxton. As these records relate to a criminal investigation, they are exempt from disclosure under the RTKL and CHRIA.[14]

---

[14] The OAG also argues that the records are protected from disclosure under the Wiretap Act. As the Appeals Officer did not reach this issue in his Final Determination, and we agree the requested items are exempt from disclosure under the RTKL and CHRIA, we decline to address it herein.

8

Section 708(b)(16)(ii) of the RTKL exempts from access the records of an agency relating to or resulting in a criminal investigation, including investigative materials, notes, correspondence, videos, and reports.[15] The plain meaning of "criminal investigation" refers to an official inquiry into a possible crime. *Pennsylvania State Police v. Grove*, 161 A.3d 877, 892-93 (Pa. 2017). Criminal investigative records remain exempt from disclosure under the RTKL even after the investigation is completed. *Barros v. Martin*, 92 A.3d 1243, 1250 (Pa. Cmwlth. 2014).

Moreover, any "record that includes information made confidential by law or court order" is exempt from disclosure under Section 708(b)(16)(iv) of the RTKL.[16] Pursuant to Section 9106(c)(4) of CHRIA,[17] investigative information shall not be disseminated unless the requester is a criminal justice agency seeking the information in connection with its duties. Section 9102 of CHRIA defines "investigative information" as "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information."[18]

While Section 708(a)(1) of the RTKL places the burden of proving that a record is exempt from public access on the Commonwealth agency receiving the request,[19] Buxton has not disputed that the records he seeks either relate to a criminal

---

[15] 65 P.S. § 67.708(b)(16)(ii).

[16] 65 P.S. § 67.708(b)(16)(iv).

[17] 18 Pa.C.S. § 9106(c)(4).

[18] 18 Pa.C.S. § 9102.

[19] 65 P.S. § 67.708(a)(1).

9

investigation or constitute criminal investigative information, which are protected from disclosure under the RTKL and CHRIA, respectively. Rather, he argues that their disclosure will not jeopardize a criminal investigation that has already concluded. It is clear from our jurisprudence, however, that the completion of the OAG's investigation does not affect whether the records related to that investigation are exempt from access. *Barros.* The Appeals Officer properly denied Buxton's appeal in this regard.[20]

## IV.   Conclusion

The affidavit presented by OAG is sufficient to establish that the emails and correspondence sought in Buxton's RTKL request do not exist. The remaining records sought by Buxton are indisputably criminal investigative records exempt from disclosure under both the RTKL and CHRIA. Accordingly, we affirm the Appeals Officer.

_____
ELLEN CEISLER, Judge

---

[20] Buxton suggests that the Appeals Officer improperly prevented him from taking part in an *in camera* review of the requested records. Buxton clearly misapprehends the purpose of an *in camera* review, which does not extend to the individual seeking access to requested documents. *In camera* inspection is defined in Black's Law Dictionary as "[a] trial judge's *private* consideration of evidence." Black's Law Dictionary 828 (9th ed. 2004) (emphasis added). The term *in camera* means: "1. In the judge's private chambers. 2. In a courtroom with all spectators excluded. 3. (Of a judicial action) taken when court is not in session. – Also termed (in reference to the opinion of one judge) *in chambers.*" *Id.* In the present controversy, an *in camera* inspection would have given the Appeals Officer, not Buxton, the opportunity to privately review the requested criminal investigative records to determine whether they were exempt from disclosure under the RTKL or CHRIA.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andy Buxton,                       :

          Petitioner       :

                             :

     v.                      :  No. 253 C.D. 2020

                             :

Office of Attorney General,    :

          Respondent   :

# **O R D E R**

AND NOW, this 21st day of October, 2020, the February 21, 2020 Final Determination of the Appeals Officer for the Pennsylvania Office of Attorney General is hereby affirmed.

_____

ELLEN CEISLER, Judge