# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,      :
          Petitioner      :
      :
        v.      :    No. 321 C.D. 2016
      :    Argued: October 17, 2016
Jaegeun Kim,      :
          Respondent      :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge


**OPINION**
**BY JUDGE SIMPSON**             **FILED: November 17, 2016**


The Pennsylvania State Police (PSP) petitions for review from the Office of Open Records' (OOR) final determination that granted the appeal filed by counsel for Jaegeun Kim (Requester), directing disclosure of a surveillance video sought under the Right-to-Know Law (RTKL).[1]  PSP argues OOR erred in relying on Pennsylvania State Police v. Grove, 119 A.3d 1102 (Pa. Cmwlth. 2015), appeal granted, 133 A.3d 292 (Pa. 2016) (Grove), which involved a materially different record created by PSP.[2]  PSP contends a surveillance video obtained from a private party to investigate a crime is exempt from disclosure under the Criminal History Record Information Act, 18 Pa. C.S. §§9102-9106, (CHRIA), and the criminal

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[2] This Court also addressed the investigative content of mobile video recordings (MVRs) in Pennsylvania State Police v. Grove (Pa. Cmwlth., No. 1646 C.D. 2014, filed September 28, 2015) (unreported), 2015 WL 5670686.

investigative exception in Section 708(b)(16) of the RTKL, 65 P.S. §67.708(b)(16). Upon review, we reverse.

## I. Background

Requester[3] sought a copy of the "police report [and] file regarding incident number N06-1293586 regarding the 2 vehicle accident of October 3, 2015 opposite Mt. Airy Casino Resort, specifically including but not limited to a copy of the surveillance footage that was seized and entered into evidence at the PSP-Swiftwater under Property Record N06-12064." Reproduced Record (R.R.) at 1a (Request). PSP denied access to the crash report and the surveillance video (Video), but granted access to a two-page Public Information Release Report (PIRR). Relevant here, PSP asserted responsive records were protected by CHRIA and the criminal investigative exception in Section 708(b)(16) of the RTKL. In support, PSP included a verification of its open records officer.

Requester appealed to OOR only as to PSP's denial of the Video. He argued Mt. Airy Casino Resort made the Video as part of its routine monitoring, and not for the purpose of investigating criminal activity. In rebuttal, PSP submitted a position statement and an affidavit explaining the investigation resulted in a citation for violating Section 3323 of the Vehicle Code, 75 Pa. C.S. §3323 (Affidavit). PSP also explained the Video was not similar to the dashboard cameras, "dash-cams," also known as MVRs, at issue in Grove.

---

[3] Curtis Gilfillan, Esq. submitted the request on behalf of his client, Requester, identified as the party in interest. See Certified Record, Item No. 1 (Cover letter to Request).

2

Based on the documentary evidence, OOR issued a final determination granting access to the Video. Gilfillan v. Pa. State Police, OOR Dkt. No. AP 2015-2766 (filed February 3, 2016) (Final Determination). It reasoned PSP's evidence did not contain sufficient detail regarding the contents of the Video as required by Grove. OOR recognized, "[u]nlike the decision in Grove, the [Video] was not created by the PSP; instead the PSP would not be in possession of the [Video] if not for an investigation into the vehicle accident." Final Determination at 6. Nonetheless, OOR held the Video was sufficiently similar to the dashboard cameras in Grove so as to render that holding applicable. Determining the Video was not "inherently investigatory in nature," OOR ordered its disclosure. Id. at 7.

PSP filed a petition for review to this Court.

## II. Discussion

On appeal,[4] PSP argues it proved by a preponderance of the evidence that the Video related to a criminal investigation, and was investigative information under CHRIA; thus, it was exempt. PSP assigns error in applying Grove to this type of record because that case was limited to records created by PSP that show officers' performance of their duties. By contrast, PSP did not create the Video; rather, it was created by a third party. The Video only came into PSP's possession by virtue of PSP's investigation into a criminal incident.

---

[4] In a RTKL appeal involving a Commonwealth agency, this Court has the discretion to rely upon the record created below or to create its own. Dep't of Labor & Indus. v. Heltzel, 90 A.3d 823 (Pa. Cmwlth. 2014) (en banc).

Requester counters that <u>Grove</u> applies. As a result, PSP needed to substantiate that the contents of the Video constitute investigative information, and how the depiction of a motor vehicle accident is investigative in nature. He asserts PSP's evidence did not meet the test stated in <u>Grove</u>, so PSP did not meet its burden.

Under the RTKL, records in possession of an agency are presumed public unless they are: (1) exempt under Section 708 of the RTKL; (2) protected by privilege; or, (3) exempt "under any other Federal or State law or regulation or judicial order or decree." Section 305 of the RTKL, 65 P.S. §67.305. A Commonwealth agency like PSP bears the burden of proving a record is exempt. The agency bears the burden of substantiating its denial on appeal to OOR by a preponderance of the evidence.[5] <u>Heavens v. Dep't of Envtl. Prot.</u>, 65 A.3d 1069 (Pa. Cmwlth. 2013).

PSP asserted two exemptions applied here, CHRIA and the criminal investigative exception in Section 708(b)(16) of the RTKL. Section 708(b)(16) protects "a record of an agency <u>relating to</u> or resulting in <u>a criminal investigation</u>, including … (ii) investigative materials, notes, correspondence, <u>videos</u> and reports." 65 P.S. §67.708(b)(16) (emphasis added); <u>see</u> <u>Mitchell v. Office of Open Records</u>, 997 A.2d 1262 (Pa. Cmwlth. 2010) (PSP affidavit substantiated exception).

Generally, CHRIA concerns collection, maintenance, dissemination, disclosure and receipt of criminal history record information. CHRIA prohibits

---

[5] A preponderance of the evidence under the RTKL is "tantamount to 'a more likely than not inquiry.'" <u>W. Chester Univ. v. Schackner</u>, 124 A.3d 382, 393 (Pa. Cmwlth. 2015) (citation omitted).

4

PSP from disseminating "investigative information" to any persons or entities, other than criminal justice agents and agencies. 18 Pa. C.S. §9106(c)(4). CHRIA defines "investigative information" as "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing ...." 18 Pa. C.S. §9102 (emphasis added).

In support of its exemptions, PSP submitted documentary evidence including the PIRR and the Affidavit. The Affidavit described the Video, stating "the [Video] seized and entered into evidence … [was a] record related to a criminal investigation … [and] was used during the investigation to determine what happened. … [From the Video] it was determined that Unit 1 had driven from a Mount Airy Casino parking lot directly through a posted stop sign and into traffic on Woodland Road." R.R. at 23a (Affidavit at ¶¶13, 14). "In addition … the [Video] is exempt from disclosure pursuant to [CHRIA]." Id. at ¶16. The PIRR, which identifies Requester as an injured passenger, also states PSP's investigation included video surveillance.

Because OOR relied on Grove in directing disclosure, its applicability is central to our analysis. In Grove, we held records connected to a criminal proceeding are "not automatically exempt" as investigative records. Id. at 1108. There, PSP appealed OOR's final determination that ordered it to disclose MVRs to a requester. The MVRs recorded a two-vehicle accident. PSP argued the MVRs were protected under Section 708(b)(16) of the RTKL and CHRIA. This Court assessed the type of records at issue, (MVRs) and the purpose of the video recordings. In so doing, we recognized:

5

> MVRs are created to document troopers' performance of their duties in responding to emergencies and in their interactions with members of the public, not merely or primarily to document, assemble or report on evidence of a crime or possible crime. … PSP uses MVRs to document the entire interaction and actions of the trooper, including actions which have no investigative content, such as directions to motorists in a traffic stop or at an accident scene, police pursuits, and prisoner transports.

Id. at 1108 (emphasis added). Based on the type of record, this Court concluded "MVRs themselves are therefore not … investigative information, or records relating or resulting in a criminal investigation exempt from disclosure under … CHRIA." Id. PSP was not entitled to withhold the MVRs in their entirety when only those parts of the MVRs that were "investigative," such as portions disclosing the contents of witness interviews or showing evidence collection, qualified for protection.

OOR reasoned, and Requester argues, that our rationale in Grove applies equally to the Video here. We disagree.

Our reasoning in Grove applies to recordings by PSP that capture its interaction with the public and actions of its officers. Specifically, in Grove we framed the issue before us as follows: "The primary issue presented by this appeal is whether such video recordings of interaction between law enforcement officers and members of the public in a public place are exempt from disclosure as criminal investigative records under the [RTKL] and [CHRIA]." Id. at 1104 (emphasis added). The MVRs or "dash-cams" or "body-cams" that capture PSP's activities and transactions on a daily basis contain non-investigative content relative to PSP's

6

performance of its agency functions. Further, there is an interest in their disclosure as records "of" PSP showing PSP's activities and transactions. That is not the case for the Video.

In contrast to the records at issue in Grove, the Video was generated by a private party that is not subject to the RTKL. There is no dispute that the Video was recorded at Mt. Airy Casino, and PSP did not create the video or its contents attendant to performing its duties. There is no evidence suggesting the Video shows PSP officers performing their duties or interacting with the public. The Video only became a record "of" PSP, and so accessible through the RTKL, when PSP obtained it from a private party to investigate a criminal offense.[6]

The character of the Video, including its genesis, and its purpose, is quite different from the MVRs in Grove. Although the appeals officer in OOR recognized the distinction in the source of the Video from the recordings in Grove, the Final Determination did not address it. Instead, OOR reasoned the content of the Video dictated whether it qualified for protection under Section 708(b)(16) or CHRIA. Following Grove, OOR reasoned that only those parts of the Video that furthered an investigation of a criminal incident and revealed activities undertaken as part of an investigation, such as witness interviews, evidence collection, and physical inspection, were investigative in nature and enjoyed protection.

---

[6] As such, the Video is similar to the record underlying OOR's action to enforce an *in camera* order directing review of a Mt. Airy Casino video depicting a criminal trespass incident. Office of Open Records v. Pa. State Police, __ A.3d __ (Pa. Cmwlth., No. 370 M.D. 2016, filed August 8, 2016) (single j. op.). There, as the request (including the police incident report), on its face, showed the video related to a crime, and PSP gathered it to investigate the crime, the Court reasoned Grove did not apply.

7

Essentially, OOR expanded <u>Grove</u> beyond records documenting PSP's routine activities, to records PSP gathers from outside sources when investigating a potential crime. In so doing, OOR disregarded that "as documentation of law enforcement officers' conduct in carrying out their duties, MVRs are records at the core to the RTKL's purpose of enabling the public to 'scrutinize the actions of public officials, and make public officials accountable for their actions.'" <u>Id.</u> at 1108-09 (citation omitted). Thus, the record's purpose was integral to the holding. By construing <u>Grove</u> as creating an "investigative in nature" test for allegedly criminal investigative records, despite their purpose, OOR erred.

Although the rationale in <u>Grove</u> does not apply to the Video, we undertake the same steps in analyzing whether the asserted exemptions apply based on the evidence PSP submitted regarding the nature of the record.

Here, PSP submitted the PIRR and Affidavit to show the source of the Video, and that it was seized to investigate whether a criminal offense occurred. That suffices to show that the record "related to" a criminal investigation. PSP was not required to describe the contents or how the Video's depiction of a motor vehicle accident was "investigative in nature." The language of the exception requires that the record "relate to" a criminal investigation.

In extending <u>Grove</u> to encompass records created by and seized from private parties attendant to a criminal investigation, OOR disregarded the confines of the RTKL. It bears emphasis that only records "of" an agency are subject to disclosure. "Record" is defined as "[i]nformation … that documents a transaction

8

or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency." Section 102 of the RTKL, 65 P.S. §67.102. Here, unlike the MVRs, the Video itself does not document any transaction or activity of PSP. The Video did not become a record accessible from PSP until PSP undertook a criminal investigation of the crash. Thus, the Video related to PSP's criminal investigation.

PSP's acquisition of the Video also pertains to whether CHRIA applies. CHRIA protects "investigative information" "<u>assembled as a result of</u> the performance of <u>any inquiry</u>, formal or informal, <u>into a criminal incident</u> …" from disclosure. 18 Pa. C.S. §9102 (emphasis added).

In construing the terms in a statute, we consider their plain meaning. 1 Pa. C.S. §1903. The operative word in the above definition is "assembled." "Dictionaries provide substantial evidence of a term's ordinary usage." <u>Dep't of Health v. Office of Open Records</u>, 4 A.3d 803, 810 (Pa. Cmwlth. 2010). "Assemble," used as a verb, means to "bring or gather together into a group or whole." AM. HERITAGE DICTIONARY 134 (2nd Coll. ed. 1985).

There is no dispute that PSP gathered the Video when assembling its criminal investigation. The PIRR and the Affidavit support the material facts that PSP seized the Video as part of an inquiry into a criminal incident. Therefore, the Video is also exempt under CHRIA as investigative information.

### III. Conclusion

PSP met its burden that the Video relates to a criminal investigation, and that it was assembled in conducting a criminal investigation. Therefore, the Video is exempt under both Section 708(b)(16) of the RTKL and CHRIA. Accordingly, we reverse OOR's Final Determination.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,       :
                Petitioner     :
      :
         v.              :    No. 321 C.D. 2016
      :
Jaegeun Kim,       :
             Respondent    :

## O R D E R

**AND NOW**, this 17th day of November, 2016, the final determination issued by the Office of Open Records is **REVERSED**.

 

 

_____
ROBERT SIMPSON, Judge