# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Bentley, : 
            Appellant : 
            :
           v. :    No. 936 C.D. 2020
            :    Argued: May 10, 2021
Allegheny County Police Department : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON            FILED: June 24, 2021

James Bentley (Requester) appeals from an order of the Allegheny County (County) Court of Common Pleas (Trial Court) that affirmed the County District Attorney (DA) Appeals Officer's final determination denying his request for police motor vehicle recordings (MVRs) under the Right-to-Know Law (RTKL).[1] The County Police Department (County PD) protected the MVRs under Section 708(b)(16) of the RTKL, 65 P.S. §67.708(b)(16), and the Criminal History Record Information Act, 18 Pa. C.S. §§9102-9106 (CHRIA). As the record is insufficient to evaluate the MVRs' investigative nature under *Pennsylvania State Police v. Grove*, 161 A.3d 877 (Pa. 2017), we vacate the Trial Court's order and remand the matter for additional factfinding and explanation to enable effective appellate review.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

## I. Background

Requester submitted a RTKL request seeking copies of: "cop car videos with report for incident at 312 Elliot Rd. Monroeville on 8/15/2007 around 6 p[.]m[.]" Reproduced Record (R.R.) at 22a. Though the denial is not in the record, there is no dispute that County PD initially denied access based on lack of responsive records.

Requester appealed that denial to the Office of Open Records (OOR), appending to his appeal an affidavit prepared by the Police Chief in Monroeville, Kenneth Cole (Police Chief), in December 2019, in response to Requester's separate RTKL request to the Monroeville Police Department (Police Chief Affidavit). R.R. at 59a-60a. Police Chief attested that the Monroeville Police Department responded to an incident at the stated address which involved a homicide. Police Chief explained that the Monroeville Police Department copied the MVRs from the two responding police vehicles onto discs and provided those discs to the County PD because it was conducting the homicide investigation.

After reviewing the Police Chief Affidavit, County PD acknowledged it possessed copies of the MVRs; however, it asserted that the records were exempt from disclosure under Act 22 of 2017, 42 Pa. C.S. §67A03 (relating to requests for law enforcement audio recordings or video recordings)[2] and the criminal investigation exception in Section 708(b)(16) of the RTKL. County PD submitted an affidavit from Patrolman Louis Blouth, Jr., (Patrolman), who handled its RTKL requests, regarding his prior unsuccessful search for and subsequent discovery of responsive records (PD Affidavit). He attested that the records were in County PD's file for a closed homicide investigation for which the perpetrator was currently incarcerated.

---

[2] Act of July 7, 2017, P.L. 304. Act 22 creates an exclusive means of accessing MVRs created by law enforcement, requiring the submission of any requests for such records within 60 days of recording.

After soliciting additional information from both parties,[3] OOR determined that Act 22 of 2017 did not apply to the MVRs at issue. *See* OOR Final Determination, OOR Dkt. AP-2020-0143 (issued Apr. 3, 2020), R.R. at 30a-37a. However, OOR did not analyze the criminal investigation exception in Section 708(b)(16) of the RTKL for lack of jurisdiction over law enforcement records.[4] *See* Section 503(d)(2) of the RTKL, 65 P.S. §67.503(d)(2). Thus, OOR transferred the appeal to the appeals officer for the County (DA Appeals Officer).

On April 8, 2020, the DA Appeals Officer affirmed the denial, citing only the criminal investigation exception under the RTKL. Based on the affidavits, he concluded that the MVRs qualified as records related to a criminal investigation under the exception because they pertained to a closed homicide investigation and were thus properly withheld on that ground. R.R. at 16a-17a.

Before the Trial Court, the factfinder here,[5] County PD also asserted CHRIA, specifically, 18 Pa. C.S. §9102, as a statutory exemption. Requester maintained that County PD did not establish the video footage on the MVRs qualified as investigative material under our Supreme Court's decision in *Grove*.

---

[3] Although OOR noted that Requester asserted the video footage was shown in the public domain on a television program, there was no evidence to support that assertion. Indeed, during argument before this Court, Requester conceded he lacked any basis to pursue that argument.

[4] Because OOR is not a criminal investigative or law enforcement entity, it lacks jurisdiction to evaluate the criminal nature of records. *Off. of Open Recs. v. Pa. State Police*, 146 A.3d 814 (Pa. Cmwlth. 2016) (single j. op.).

[5] "A court reviewing an appeal from an [appeals] officer is entitled to the broadest scope of review, a review of the entire record on appeal along with other material, such as a stipulation of the parties, or an *in camera* review of the documents at issue, and we may further supplement the record through hearing or remand." *Pa. Dep't of Lab. & Indus. v. Darlington*, 234 A.3d 865, 871 n.6 (Pa. Cmwlth. 2020) (citation omitted).

As neither party intended to call any witnesses, the Trial Court set a briefing and argument schedule. R.R. at 42a. The Trial Court also held a hearing where the County PD submitted evidence in the form of the two affidavits (PD and Police Chief) and the final determinations issued by OOR and the DA Appeals Officer. During the hearing, Requester stipulated to the facts presented by County PD in its brief and to the basic facts set forth in the two affidavits.

After conducting *in camera* review of the MVRs and reviewing the parties' briefs, the Trial Court entered the following order:

> AND NOW, to wit, this 26th day of August, 2020, after hearing and *in camera* review of the records in question, I find that they are exempt under 65 P.S. §67.708(b)(16)(ii); [Section 305(a)(3) of the RTKL,] 65 P.S. §67.305(a)(3); and 18 Pa. C.S. §9106(c)(4). The April 8, 2020, decision of the [County DA] Open Records Appeals Officer is affirmed and [Requester's] Petition for Review is denied.

Trial Ct. Order, 8/26/20, R.R. at 80a. Requester appealed the order to this Court and filed a statement of errors complained of on appeal under Pa.R.A.P. 1925(b). Primarily, Requester argued that the evidence was insufficient to protect the MVRs in their entirety, such that the result was contrary to that in *Grove*. He also complained that the Trial Court did not issue findings of fact or conclusions of law in accordance with Section 1302(a) of the RTKL, 65 P.S. §67.1302(a).

The Trial Court issued its opinion pursuant to Pa.R.A.P. 1925(a),[6] reasoning the MVRs were protected as investigative based on our decision in *Port Authority of Allegheny County v. Towne*, 174 A.3d 1167 (Pa. Cmwlth. 2017). The Trial Court concluded that the records were exempt based on its *in camera* review.

---

[6] The Trial Court reasoned that its opinion issued pursuant to Pa.R.A.P. 1925(a) cured any alleged deficiencies under Section 1302 of the RTKL, 65 P.S. §67.1302, because its opinion contained findings and explained the rationale underlying its decision.

Specifically, the Trial Court explained the MVRs at issue here

> began when the Monroeville police arrived to investigate a homicide. The footage was taken from police vehicles positioned outside the residence of the homicide in Monroeville. The MVRs depict Monroeville police preserving the scene and County detectives processing the scene. They also depict the victim and the defendant being taken from the scene.

Trial Ct., Slip Op., 11/25/20, at 3, R.R. at 92a-96a. The Court distinguished the MVRs at issue here from those in *Grove* in that the Monroeville Police Department intentionally recorded police activity when it responded to a reported homicide, and then provided the recordings to County PD to aid its investigation. Instead, the Trial Court likened the MVRs in this case to the bus video in *Towne*, where the video was maintained for purposes of investigating an accident claim.

After briefing and argument, the matter is ready for disposition.

## II. Contentions

On appeal,[7] Requester argues that the County PD did not meet its burden of proof, which the courts construe narrowly to require disclosure of any public aspects of the MVRs. He also challenged the sufficiency of the Trial Court's findings and conclusions in support of the agency's denial of access.

County PD counters that these circumstances differ from *Grove* such that the Trial Court properly withheld the MVRs in their entirety. It posits that *Towne* is more germane because County PD obtained the MVRs for its homicide investigation, which suffices to establish their investigative purpose.

---

[7] This Court's "review of a trial court's order in a[n] RTKL dispute is 'limited to determining whether findings of fact are supported by competent evidence or whether the trial court committed an error of law, or an abuse of discretion in reaching its decision.'" *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 178 n.8 (Pa. Cmwlth. 2019) (citations omitted).

### III. Discussion

The RTKL mandates agency disclosure of public records "consistent with the [statutory] goal of promoting government transparency . . . ." *Easton Area Sch. Dist. v. Miller*, 232 A.3d 716, 724 (Pa. 2020). Section 102 of the RTKL defines "record" as:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, <u>film</u> or sound <u>recording</u>, information stored or maintained electronically and a data-processed or image-processed document.

65 P.S. §67.102 (emphasis added). "Accordingly, video footage [on MVRs] is a record." *See Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 178 n.3 (Pa. Cmwlth. 2019).

Records in an agency's possession are presumed public and thus subject to disclosure unless the records: (1) qualify under an exception contained in Section 708(b) of the RTKL, 65 P.S. §67.708(b); (2) are privileged; or (3) are exempt "under any other Federal or State law or regulation or judicial order or decree." Section 305(a) of the RTKL, 65 P.S. §67.305(a). RTKL exemptions are construed narrowly in accordance with the statute's remedial nature, and "in a manner that comports with the statute's objective, 'which is to empower citizens by affording them access to information concerning the activities of their government.'" *Grove*, 161 A.3d at 892 (citation omitted).

County PD asserted that two exemptions applied here, CHRIA and the criminal investigation exception in Section 708(b)(16) of the RTKL, 65 P.S. §67.708(b)(16). The Trial Court held the MVRs were exempt on both grounds.

6

Section 708(b)(16) protects "a record of an agency <u>relating to or resulting in a criminal investigation</u>, <u>including</u> . . . (ii) investigative materials, notes, correspondence, <u>videos</u> and reports." 65 P.S. §67.708(b)(16) (emphasis added). When a record, on its face, relates to a criminal investigation, it is protected by this exception. *Pa. State Police v. Kim*, 150 A.3d 155, 157-58 (Pa. Cmwlth. 2016); *Barros v. Martin*, 92 A.3d 1243 (Pa. Cmwlth. 2014) (per curiam); *Coley v. Phila. Dist. Att'y's Off.*, 77 A.3d 694 (Pa. Cmwlth. 2013) (holding witness statements used by prosecution are investigative).

Generally, CHRIA concerns collection, maintenance, dissemination, disclosure, and receipt of criminal history records. CHRIA prohibits a law enforcement entity like County PD from disseminating "investigative information" to any persons or entities other than criminal justice agents and agencies. 18 Pa. C.S. §9106(c)(4). CHRIA defines "investigative information" as "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing . . . ." 18 Pa. C.S. §9102.

CHRIA and the criminal investigation exception in the RTKL are often asserted together, and the courts apply the same analysis in determining whether records qualify as investigative of criminal activity. *See Grove*; *Coley*.

### A. Burden of Proof under *Grove*

First, we consider Requester's assertion that County PD did not meet its burden of proving the criminal investigative exemptions in CHRIA and Section 708(b)(16) of the RTKL. A local agency must establish a RTKL exception by a preponderance of the evidence. Section 708(a) of the RTKL, 65 P.S. §67.708(a). "The preponderance of the evidence standard, which is 'the lowest evidentiary standard, is tantamount to a more likely than not inquiry.'" *Smith on behalf of*

*Smith Butz, LLC v. Pa. Dep't of Env't Prot.*, 161 A.3d 1049, 1059 n.10 (Pa. Cmwlth. 2017) (citation omitted).

The litmus test for analyzing the criminal investigation exception is our Supreme Court's decision in *Grove*, and as refined by subsequent case law. There, our Supreme Court affirmed our holding that the video of MVRs was not exempt under Section 708(b)(16). It expressly rejected the Pennsylvania State Police's (PSP) contention that MVRs are generally exempt, and held, instead, that the question must be determined on a case-by-case basis. *Id.* at 894.

In analyzing the term "criminal investigation," the Court employed statutory construction principles, including consulting the plain meaning of "criminal investigation." *Id.* at 892; *see* 1 Pa C.S. §1903. Specifically, the Court held that determining whether a record is investigative in nature requires an examination of "whether the video aspects [of MVRs] generally depict a systematic inquiry or examination into a potential crime." *Id.* at 893. The Court noted that recordings of PSP's routine tasks are not investigative in nature. Despite detailed affidavits describing the MVR purpose and contents, the Court upheld this Court's conclusion that PSP failed to meet its burden of proof.

Relevant here, the Supreme Court squarely rejected PSP's assertion that MVRs capturing an investigation of whether a motor vehicle violation occurred qualify as a "'criminal investigative record' exempt from disclosure." *Id.* In evaluating the exception, the Court reviewed PSP's supporting affidavit in some detail. It noted the affidavit explained the multiple purposes of MVRs, which depicted "non-investigative situations, including: 'directions to motorists in a traffic stop or at an accident scene, police pursuits and prisoner transports.'" *Id.* (citing PSP affidavit). There was also a range of reasons for retaining the MVRs,

8

which was not limited to criminal investigations only, but also extended to civil, administrative, or disciplinary proceedings. *Id.* Because the retention and use of the MVRs varied, the Court emphasized that the type of record (MVR) was not categorically exempt despite that the recording was made and retained by a law enforcement agency. Rather, it underscored that the law enforcement agency had the burden to prove that the protected portions of MVRs depicted a criminal investigation, such as in-progress crimes, searches of vehicles or persons, field interviews, interrogations, or intoxication testing. *Id.* at 894. From PSP's evidence, the Court discerned that the "the MVRs at issue [did] not depict the accident itself," but instead showed the troopers observing the scene and engaging with drivers and witnesses. *Id.* (emphasis added). The Court recognized that PSP issued citations not based on the video footage, but rather on the statements taken at the scene.

Ultimately, the Court held that only the audio portion of the MVR that captured the police interviews qualified for protection as criminal investigative material. *Id.* at 895. As such, it allowed redaction of the investigative content (audio portion) of the MVRs and required disclosure of the video footage.

In so ruling, the Court reasoned there must be *evidence* that the video footage depicted a criminal investigation. *Id.* at 894. Critically, the Court emphasized that "PSP simply does not explain how the video portion of the MVRs captured any criminal investigation. In fact, PSP concedes the only potentially investigative information consisted of the verbal statements captured on [one] MVR, which the [Chapter 13] Court expressly ordered should be redacted prior to release of the MVRs." *Id.* at 895 (emphasis added). The video footage, the Court noted, depicted no more than what a bystander would observe. Barring additional explanation, such video footage was not properly withheld.

**B. *Grove* Applied**

A close reading of *Grove* reveals a number of factors in addition to the "bystander" view highlighted by Requester. *See* Requester's Br. at 9, 11 (*i.e.*, showing "nothing more than what a bystander would observe"). That the MVRs captured footage that a discerning bystander could observe did not render them public. To the contrary, the Court considered how the MVR was used and whether the MVR was useful in showing whether a violation or crime occurred. Thus, the Court recognized that the reasons for recording and retaining the MVR were relevant to whether it was investigative.

Pursuant to *Grove*, the Trial Court was required to evaluate each claim that a record is exempt as relating to an investigation on its unique facts. *Grove*, 161 A.3d at 894. Other than the Trial Court's *in camera* review, the record in this case is comprised of two affidavits: (1) the Police Chief Affidavit; and (2) the PD Affidavit. The Police Chief Affidavit states, in pertinent part:

> 4. [t]he video recordings in question were recorded by the in-car video system of the [Monroeville] Police Department and relate to a homicide investigation conducted by [County PD].
>
> 5. The video recordings in question were downloaded onto CDs from the video recording system hard drive and provided to [County PD] as the lead investigative agency for this incident on August 15, 2007.

R.R. at 59a-60a. The PD Affidavit states, in pertinent part:

> 6. Given [the information in the Appeal file] we were able to locate and recall the file. Upon receipt, we did in fact locate two discs containing in[-]car camera police recordings of the first responding police vehicles to the crime scene. These police recordings are part of [County PD's] criminal investigative file and, had they been identified upon initial request, would have been denied accordingly.

10

7. Upon reviewing the file I further learned that the defendant in this case, John Mullarkey, was charged with and convicted by jury of Murder of the First Degree and was sentenced to life in prison without the possibility of parole on June 29, 2009.

8. It further appears that a [Post Conviction Relief Act, 42 Pa. C.S. §§9541-9546] petition is currently active on appeal in Pennsylvania's Superior Court.

R.R. at 28a-29a.

County PD maintains that the circumstances in this case are closer to those in *Towne*, which involved a noncriminal investigation, than to those in *Grove*. We disagree.

In *Towne*, the records requested were videos from a Port Authority bus. The Authority asserted the noncriminal investigation exception in Section 708(b)(17) of the RTKL, for which the courts use similar standards when analyzing whether the record qualifies as investigative, based on its content or purpose. Notably, the evidence in *Towne* reflected that the videos were only retained because there was an incident depicted on video, and the video was therefore related to the Authority's noncriminal investigation of the incident.

The Authority argued that the bus video was an investigative record because it was downloaded for purposes of an investigation into a civil claim. Crucially, we held the Authority established that the bus video was used in and created solely for the purpose of doing an investigation. We distinguished the bus video in *Towne* from the MVRs in *Grove* as follows:

> Specifically, unlike the MVRs in *Grove*, which an affidavit indicated were also used to document troopers' performance of their duties and interactions with members of the public, the Authority's affidavits indicated that the sole purpose of the recordings was for use in investigations. This brings us to the somewhat intertwined issue of the relatedness between the noncriminal investigation and the Authority's recordings.

11

*Towne*, 174 A.3d at 1173.

In this case, the Trial Court explained that the difference between the videos in *Grove* and *Towne* was the purpose of the video, *i.e.*, the reason it was created or maintained. Specifically, the Trial Court stated: "The distinction between *Grove* [*II*]. . . and *Towne* . . . is the purpose of the video. . . . in *Towne* the affidavits indicated that the <u>sole purpose</u> of the recordings was for use in investigations." Trial Ct., Slip Op. at 4 (emphasis added) (quoting *Towne*, 174 A.3d at 1173).

However, in contrast to *Towne* or *Grove*, the record on appeal here contains scant evidence about either the content or the purpose of the MVRs. The PD Affidavit states only that the MVRs were of the first responding police vehicles and part of County PD's investigative file. *See* PD Affidavit, ¶6, R.R. at 28a. While the PD Affidavit identifies the crime, it does not describe the content of video footage or how the footage related to the investigation. This is in stark contrast to *Grove* in which the affidavits outlined the purpose of the MVRs and described the content of the footage, and the general use of MVRs.

The Police Chief Affidavit also did not describe the content. It states simply that the MVRs are part of the "in-car camera system operated by the Police Department [(Monroeville)] [, which] stores video recordings on the system hard drive for a period not in excess of ninety (90) days, before the video recordings are over-written with new video recordings for more recent time periods." Police Chief Affidavit, ¶7, R.R. at 59a.

In addition to the affidavits, the Trial Court had the benefit of reviewing the MVR contents *in camera*. However, the Court's description of the content consists of the following:

12

[The MVRs] began when the Monroeville police arrived to investigate a homicide. The footage was taken from police vehicles positioned outside the residence of the homicide in Monroeville. The MVRs depict Monroeville police preserving the scene and County detectives processing the scene. They also depict the victim and defendant being taken from the scene.

Trial Ct., Slip Op. at 3. In order for this Court to assess whether the Trial Court's order is consistent with the standards in *Grove*, more description is necessary so we may discern how the video footage the Trial Court viewed differs from what a bystander may observe, or whether there were any witnesses or bystanders onsite. As in *Grove*, this Court requires additional explanation of how the MVRs at issue are investigative.

Though the Trial Court states the MVRs here were solely used to investigate the homicide, the current record does not contain sufficient evidence of that fact. Unlike the record in *Grove*, the record on appeal before this Court, serving in our appellate capacity, contains no evidence regarding the reason for the MVRs, how the MVRs are used generally, or whether the video footage captured on the MVRs at issue was used here in investigating the homicide.

*Grove* teaches us that a statement that records were placed in a homicide investigation file is not dispositive as to the investigative nature of the records at issue. Stated differently, that the MVRs were found in an investigation file does not definitely mean they were utilized in the criminal investigation. *Grove*. Yet, the Trial Court appears to heavily rely on the fact that County PD eventually located the MVRs sought in its homicide investigative file.

Moreover, when applying the exemptions under the RTKL, in addition to narrowly construing them, our highest Court consistently mandates maximal disclosure, such that "when a record contains information which is subject to access along with information which is not subject to access and the two

13

cannot be physically separated, 'the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access.'" *Easton Area Sch. Dist.*, 232 A.3d at 731 (plurality op.) (quoting Section 706 of the RTKL, 65 P.S. §67.706, relating to redaction;[8] majority held agency failed to meet burden of proof and "video itself is a public record subject to disclosure").

Mindful that the Supreme Court stringently applies exemptions from disclosure, and favors public access when the protected nature of the records is not established by the record, this Court deems the record before us insufficient to adequately assess whether the entirety of the video footage on the MVRs is exempt as the Trial Court concluded. *See Off. of the Governor v. Davis*, 122 A.3d 1185 (Pa. Cmwlth. 2015) (*en banc*); *Coley* (vacating and remanding in part for trial court to describe immunity agreement in more detail to enable this Court's assessment of Section 708(b)(16) of the RTKL). Nonetheless, this Court recognizes that "records reviewed *in camera* [may constitute] sufficient evidence for an agency to meet its burden of proof." *Davis*, 122 A.3d at 1194.

On the submitted record, the purpose or use of the MVRs is not altogether clear. Further, to the extent that the Trial Court's order relied on the content of the MVRs viewed *in camera*, the record is insufficient for this Court to conduct effective appellate review. As such, a remand to the Trial Court to make

---

[8] Section 706 of the RTKL, 65 P.S. §67.706, provides in pertinent part:

If the information which is not subject to access is an integral part of the public record, legislative record or financial record and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access is able to be redacted.

14

additional findings regarding the investigative nature of the video footage based on its review and to supplement its rationale for applying the exemptions as it did here is appropriate. *See, e.g.*, *Suber-Aponte* (reversing in part and remanding for further explanation of what footage was protected).

On remand, the Trial Court shall issue additional findings, including a more detailed description of the video footage at issue, and supplement its rationale in support of the criminal investigative exemptions (Section 708(b)(16) and CHRIA) consistent with *Grove*. *See Am. C.L. Union of Pa. v. Pa. State Police*, 232 A.3d 654, 671 (Pa. 2020) (vacating and remanding to this Court as the Chapter 13 court). As the Chapter 13 court, the Trial Court "is the ultimate finder of fact under the RTKL, [so] it would be inappropriate for us to step into its place." *Id.* at 671. Consistent with its role as factfinder, "the [Trial] [C]ourt also retains discretion to further develop the record" as it deems fit. *Id.* However, at a minimum, the Trial Court shall ensure that the record on appeal complies with Section 1303(b) of the RTKL, which provides: "The record before a court shall consist of the request, the agency's response, the appeal filed under [S]ection 1101, the hearing transcript, if any, and the final written determination of the appeals officer." 65 P.S. §67.1303(b).

## IV. Conclusion

For the foregoing reasons, we vacate the Trial Court's order and remand the matter to the Trial Court for further factual findings and description of the records viewed *in camera*, including how various aspects of the video footage meet the standards for investigative nature under *Grove*.

_____
J. ANDREW CROMPTON, Judge

Judge Wojcik did not participate in the decision of this case.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Bentley,                              :
                    Appellant              :
                                           :
          v.                               :     No.  936 C.D. 2020
                                           :
Allegheny County Police Department         :

# **O R D E R**

**AND NOW**, this 24th day of June 2021, the order of the Allegheny County Court of Common Pleas is VACATED, and the matter is REMANDED for additional findings and legal conclusions in accordance with the accompanying opinion.

Jurisdiction is relinquished.

_____
J. ANDREW CROMPTON, Judge