## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dylan Segelbaum and | : | |
| York Daily Record, | : | |
| Petitioners | : | |
| | : | |
| v. | : | |
| | : | |
| Office of Attorney General, | : | No. 662 C.D. 2022 |
| Respondent | : | Submitted: March 3, 2023 |

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                    HONORABLE ELLEN CEISLER, Judge
                    HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED: August 17, 2023

Dylan Segelbaum and the York Daily Record (collectively, Segelbaum) appeal from the June 9, 2022 final determination (Final Determination) issued by the Pennsylvania Office of the Attorney General (OAG) that denied Segelbaum's appeal of the OAG's denial of Segelbaum's March 17, 2022 records request (Request) made pursuant to Pennsylvania's Right-to-Know Law[1] (RTKL). Upon review, we affirm.

The facts underlying the incidents leading to the Request are both tragic and undisputed. On November 15, 2021, an individual (Victim) submitted to the

_____

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-.3104.

York Area Regional Police Department[2] a private criminal complaint (Private Criminal Complaint) pertaining to a previously issued emergency protection from abuse order (PFA Order) intended to protect Victim's two daughters from her estranged husband, Robert Vicosa (Vicosa), a former police officer from nearby Baltimore County, Maryland. *See* Private Criminal Complaint, attached as Exhibit A to the Affidavit of York County First Assistant District Attorney Timothy J. Barker (Barker Affidavit), which in turn is attached as Exhibit 2 to the Petition for Review. The Private Criminal Complaint challenged the failure of the York Area Regional Police Department's Chief of Police Tim Damon[3] to have his department serve the PFA Order on Vicosa.[4] On November 18, 2021, Vicosa murdered Victim's daughters and committed suicide.[5] Thereafter, the York County District Attorney's Office (YCDAO) referred the Private Criminal Complaint to the OAG.

---

[2] Now the York County Regional Police Department. *See* Affidavit of York County First Assistant District Attorney Timothy J. Barker (Barker Affidavit), attached as Exhibit 2 to the Petition for Review, at 1.

[3] Victim filed the Private Criminal Complaint against the "Chief of Police" of the "York Area Regional Police." Private Criminal Complaint at 2 (pagination supplied).

[4] Specifically, the Private Criminal Complaint alleged:

> On the evening of 11-14-21, a PFA Emergency order was placed by Judge Ronald Haskell Jr. for protection of my daughters. At approximately 3am on 11-15-21, I was informed by two York Area Regional Officers that the Chief of Police put a stop to this order. I was given no explanation for the stop and am still unaware of the reason for stopping the order. In the meantime, my two daughters continue to be in the custody of their father [Vicosa], who is a danger to them, me, and himself.

Private Criminal Complaint at 2. The PFA Order referenced in the Private Criminal Complaint was based in part upon a kidnapping and sexual assault perpetrated on Victim by Vicosa, as well as threats made by Vicosa against the lives of Victim's children. *See* Barker Affidavit at 1.

[5] Vicosa also murdered a third person, his friend Tia Bynum, in the same incident.

2

On March 16, 2022, the OAG sent the YCDAO a letter regarding the Private Criminal Complaint (OAG Letter). *See* Final Determination at 3. The OAG Letter "related to a criminal investigation conducted by the OAG's Criminal Prosecutions Section and Bureau of Criminal Investigation." *See id.* Segelbaum claimed that the OAG Letter included a timeline of events of the Vicosa murder/suicide (Timeline) that the OAG Letter characterized as possibly useful to the YCDAO for the purpose of the development of law enforcement policies to aid in the prevention of future tragedies. *See* May 10, 2020 Right-to-Know Law Appeal 2022-078 (RTKL Appeal) at 2 (pagination supplied); R.R. at 10a. Segelbaum also claims that the OAG contemporaneously issued a press release that explained to the public that the OAG had provided the YCDAO with the OAG Letter, which reviewed and outlined the OAG's concerns with certain lapses and decisions prior to the Vicosa murder/suicide. *See id.*

On March 17, 2022, Segelbaum submitted the Request to the OAG seeking "[a] copy of the [OAG's] letter to the [YCDAO] addressing its findings about how the emergency [PFA O]rder against [] Vicosa was handled." Request, R.R. at 22a.[6] On April 25, 2022,[7] the OAG Right-to-Know Officer forwarded a final response letter denying the Request based on (1) the RTKL's criminal investigation exemption, Section 708(b)(16)(ii), (iv), (vi)(A) of the RTKL, 65 P.S. §

---

[6] Segelbaum also submitted the same request to the YCDAO. On March 21, 2022, the YCDAO responded by disclosing the portion of the OAG Letter that discussed Victim's withdrawal of the Private Criminal Complaint and then referred to the Timeline, but redacted the Timeline itself as exempt from public disclosure.

[7] On March 24, 2022, the OAG sent Segelbaum a letter in satisfaction of the RTKL's requirement that a written response to the Request be mailed within seven days. *See* OAG Letter dated March 24, 2022 (March 24 Letter); R.R. at 25a-26a. The March 24 Letter informed Segelbaum that the OAG needed additional time to comply with the Request, and that a response would be issued within 30 days. *See id.*

67.708(b)(16)(ii), (iv), (vi)(A); (2) Pennsylvania's Criminal History Record Information Act (CHRIA),[8] 18 Pa.C.S. § 9106(c)(4);[9] and (3) the attorney work-product privilege. *See* OAG Letter dated April 25, 2022; R.R. at 28a-31a.

Segelbaum appealed to the OAG, which designated an Appeals Officer. *See* RTKL Appeal; R.R. at 9a-10a. In the appeal,[10] Segelbaum argued that the RTKL's criminal investigation exemption did not apply because there was no ongoing criminal investigation at the time of the Request. *See* RTKL Appeal at 2; R.R. at 10a. Segelbaum also challenged the application of CHRIA as a reason to deny the Request because "[CHRIA] is frequently misapplied." *See id.* Additionally, Segelbaum challenged whether the information sought constitutes attorney work product where the Timeline in the OAG Letter consists of "purely factual" information. *See id.* On June 9, 2022, the Appeals Officer issued the Final Determination denying Segelbaum's RTKL Appeal. *See* Final Determination; R.R. at 41a-47a. Segelbaum thereafter filed a timely Petition for Review in this Court.

---

[8] 18 Pa.C.S. §§ 9101-9183.

[9] Regarding the dissemination of protected information, CHRIA provides that

> [i]nvestigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic.

18 Pa.C.S. § 9106(c)(4).

[10] Upon receipt of the RTKL Appeal, the OAG RTKL Appeals Officer invited the parties to provide further submissions to aid in the determination of the matter. *See* RTKL Appeals Officer Letter dated May 13, 2022; R.R. at 11a-13a. OAG responded on May 25, 2022, with a letter outlining the OAG's positions on Segelbaum's claims on appeal. *See* OAG Right-to-Know Law Officer Letter dated May 25, 2022; R.R. at 15a-40a. Segelbaum did not respond to the RTKL Appeals Officer's invitation for further submissions.

On appeal,[11] Segelbaum argues that the OAG erred by denying the RTKL Appeal because the OAG Letter is not exempt from disclosure. *See* Segelbaum's Br. at 11-27. Specifically, Segelbaum argues that the RTKL Appeals Officer erred by determining that the OAG Letter falls within the RTKL's criminal investigation exemption and/or is prohibited from dissemination by CHRIA. *See id.* at 11-17. Segelbaum claims that CHRIA provides the OAG with the discretion to publicly disclose the OAG Letter where public interest in disclosure substantially outweighs individual, agency, or public interests favoring restriction of access. *See id.* at 17-21. Segelbaum also claims that the attorney work-product privilege does not exempt the OAG Letter from disclosure. *See id.* at 22-27. The OAG counters that the three separate RTKL exemptions provided by the RTKL criminal investigation exemption, 65 P.S. § 67.708(b)(16), CHRIA, and the attorney work-product doctrine, each individually exempt the OAG Letter from disclosure. *See* OAG Br. at 12-38.

Initially, we observe that the RTKL is designed to allow citizens to scrutinize government activity and increase transparency. *See SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1034, 1050 (Pa. 2012) (stating the RTKL "is remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions" (quoting *Bowling v. Off. of Open Recs.*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010), *aff'd*, 75 A.3d 453 (Pa. 2013))). To that end, the RTKL provides that records in the possession of an agency are presumed to be public. *See* Section 305(a) of the RTKL, 65 P.S. § 67.305(a). However, the presumption does

---

[11] This Court's standard of review in RTKL cases is *de novo*, and our scope of review is plenary. *See Off. of Gen. Couns. v. Bumsted*, 247 A.3d 71, 76 n.7 (Pa. Cmwlth. 2021) (citing *Bowling v. Off. of Open Recs.*, 990 A.2d 813 (Pa. Cmwlth. 2010), *aff'd*, 75 A.3d 453, 477 (Pa. 2013)).

not apply if: "(1) the record is exempt under [S]ection 708; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law or regulation . . . ." 65 P.S. § 67.305(a). "Exemptions from disclosure must be narrowly construed due to the RTKL's remedial nature . . . ." *Off. of Governor v. Scolforo*, 65 A.3d 1095, 1100 (Pa. Cmwlth. 2013). "An agency bears the burden of proving, by a preponderance of the evidence, that a record is exempt from disclosure under one of the enumerated exceptions."[12] *Brown v. Pa. Dep't of State*, 123 A.3d 801, 804 (Pa. Cmwlth. 2015); *see* Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1).

Under the criminal investigation exemption, the RTKL protects from disclosure agency records "relating to or resulting in a criminal investigation[.]" 65 P.S. § 67.708(b)(16). While the RTKL law does not define "criminal investigation," this Court has observed that "[t]he plain meaning of a 'criminal investigation' clearly and obviously refers to an official inquiry into a possible crime." *Pa. State Police v. Grove*, 161 A.3d 877, 892-93 (Pa. 2017) (citing https://www.merriamwebster.com for definitions of "criminal" and "investigation"). Records expressly included under the criminal investigation exemption include "investigative materials, notes, [and] correspondence[,]" as well as records that, if disclosed, would "[r]eveal the institution, progress[,] or result of a criminal investigation, except the filing of criminal charges." 65 P.S. § 67.708(b)(16)(ii) & (iv)(A). Accordingly, the criminal investigation exemption covers prosecutorial materials including "notes of interviews with victims, suspects and witnesses assembled for the specific purpose of investigation." *Grove*, 161 A.3d at 893.

---

[12] "A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to a more likely than not inquiry." *Delaware County v. Schaefer ex rel. Phila. Inquirer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012).

Regarding CHRIA, this Court has observed that,

> [g]enerally, CHRIA concerns collection, maintenance, dissemination, disclosure[,] and receipt of criminal history record information. CHRIA prohibits [an agency] from disseminating "investigative information" to any persons or entities, other than criminal justice agents and agencies. 18 Pa. C.S. § 9106(c)(4). CHRIA defines "investigative information" as "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing . . . ." 18 Pa. C.S. § 9102 (emphasis added).

*Pa. State Police v. Kim*, 150 A.3d 155, 157-58 (Pa. Cmwlth. 2016) (emphasis in original).

In the Final Determination, the RTKL Appeals Officer explained that he conducted an *in camera* review of the OAG Letter and found that the OAG Letter "is a correspondence relating to a criminal investigation conducted by the OAG." Final Determination at 3; R.R. at 43a. The OAG Letter "advis[ed the YCDAO] that the criminal investigation was closed and summariz[ed] the findings of the OAG's criminal investigation." *Id.* The RTKL Appeals Officer stated that "[t]he [OAG L]etter contained information obtained by and through OAG criminal investigative activity, including interviews conducted by OAG criminal investigators, discussion of evidence or materials obtained in the course of the OAG criminal investigation, and summaries of that criminal activity." *Id.* Based on this assessment, the RTKL Appeals Officer concluded that

> the [OAG L]etter falls squarely into the records described in Section 708(b)(16) [of the RTKL] as "relating to or resulting in a criminal investigation." First, the [OAG L]etter is a correspondence relating to a criminal investigation conducted by the OAG. Second, the [OAG

7

L]etter summarizes information gathered from witness interviews and evidence collected, and thus would "reveal the institution, progress[,] or result of a criminal investigation."

*Id.* (internal citations omitted).

Following our own *in camera* review of the OAG Letter, we agree with the RTKL Appeals Officer's conclusion. The OAG Letter is obviously correspondence relating to a criminal investigation and the results thereof. The OAG Letter discusses investigative materials, notes, and other materials that, if produced, would reveal the institution, progression, and result of that criminal investigation. The Timeline included as part of the OAG Letter, while comprised of factual information, forms part of the OAG's investigative materials and notes created as part of its criminal investigation. Further, Segelbaum is not a criminal justice agent or agency. Accordingly, the preponderance of the evidence reveals that the OAG Letter is exempt from disclosure in response to a RTKL request under both the RTKL's criminal investigation exemption and CHRIA. *See* 65 P.S. § 67.708(b)(16); 65 P.S. § 67.708(b)(16)(ii) & (iv)(A); *see also* 18 Pa. C.S. § 9106(c)(4).

For these reasons, we affirm the OAG's Final Determination.[13]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[13] As a result of our determination that the OAG Letter is exempted from production by the criminal investigation exemption and CHRIA, we need not discuss whether the OAG Letter is also exempt from production pursuant to the attorney work-product privilege.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dylan Segelbaum and                     :
York Daily Record,                        :
               Petitioners         :
                             :
          v.                   :
                             :
Office of Attorney General,       :   No. 662 C.D. 2022
               Respondent     :

## O R D E R

AND NOW, this 17th day of August, 2023, the June 9, 2022 final determination issued by the Pennsylvania Office of the Attorney General is AFFIRMED.

 

 

_____
CHRISTINE FIZZANO CANNON, Judge